LAKE COUNTY FOREST PRESERVE DISTRICT, Plaintiff-Appellee, *v.* THE BANK & TRUST COMPANY OF ARLINGTON HEIGHTS *et al.*, Defendants-Appellants.

Second District    No. 81-674

Opinion filed May 10, 1982.—Rehearing denied June 28, 1982.

858

Barclay, Damisch & Sinson, of Chicago (John W. Damisch and Robert A. McNees, of counsel), for appellants.

Donald T. Morrison & Associates, of Waukegan (Donald T. Morrison and Henry C. Tonigan, III, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal by the trustee of the beneficial owner of a tract of land condemned by the Lake County Forest Preserve District, from the judgment of the trial court finding the just compensation for the land taken to be $145,000.

The tract in question comprises approximately 9.4 acres of undeveloped land zoned as SE-Suburban Estate, in unincorporated Lake County lying 1329 feet along Lake-Cook Road. On the east side, it fronts on Schaeffer Road for a distance of 289 feet. It then jogs east for 547.8 feet, north for 150 feet, then continues on east about 765 feet, thence south approximately 436 feet to Lake-Cook Road. At the time of the condemnation petition the land was being used for farming. There were no buildings on it.

Generally, the northern boundary of the village of Arlington Heights is along Lake-Cook Road. In 1975, Arlington Heights annexed a parcel of land in Lake County which was a part of a development known as Terramere which lay mostly in Cook County. The western edge of the Terramere Subdivision in Lake county is adjacent to the subject property. Otherwise, the village of Arlington Heights is bounded on the north by the center line of Lake-Cook Road.

Before trial, a preliminary question arose. The Bank & Trust Company of Arlington Heights (hereinafter defendant) made a motion for a preliminary hearing to have the trial court hear and determine whether the owner might present testimony as to value based on the reasonable probability of a future annexation and rezoning of the property. This was

objected to by the Lake County Forest Preserve District (hereinafter District) on the ground it was procedurally incorrect and that such a motion should be made at the trial stage after the jury was sworn. The trial court, while acknowledging that usually the question of value based on the probability of rezoning is heard out of the presence of the jury after the trial begins (see *Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1), allowed the motion to consider this question before the start of the trial.

■■ While it is well settled that the landowner in a condemnation case has the right to base his valuation on a use established by evidence showing a reasonable probability of rezoning, the burden of proof is on the landowner to establish by evidence that there is a reasonable probability of rezoning to that use.

The defendant in this case is contending for a valuation based on a commercial use, which would involve not only a rezoning but preliminary to that an annexation by Arlington Heights.

Due to the difference in valuation per acre between the residential and commercial use testified to by the witnesses ($20,000 as against $50,000), it was desirable for the defendant to establish the reasonable probability of a commercial use.

In the separate preliminary hearing, the trial court heard a number of witnesses on the defendant's behalf. Alan Sander, director of public works for Arlington Heights, testified that in certain areas of Arlington Heights there were wells and septic tanks, also that a subdivision of Arlington Heights known as Woodland Heights, which had a petition for annexation pending before the Arlington Heights council, might obtain sewer connections to a small private utility known as Ferndale Heights Utility Company. This evidence was necessary because there was no water or sewer available at the site in question.

Ayoub Talhami, an engineer in charge of permits for construction of sanitary sewers for the Metropolitan Sanitary District of Chicago (hereinafter MSD), testified regarding the possibility of MSD serving the property in question. From his testimony it appeared that as a general rule MSD does not serve areas outside of Cook County. He referred to this as an "unwritten" policy. From his testimony and a summary of the policy Talhami had previously prepared for MSD regarding past treatment of applications for service outside of Cook County, it appeared that exceptions to this general rule were few in number and had been made very selectively. The service of MSD appears to have been extended outside of Cook County only to territories which were annexed to Cook County municipalities already served by MSD and only after considerable negotiations. Talhami testified that in the instant case there would first have to be an annexation to Arlington Heights and then a decision made

by MSD as to the practical possibility and the desirability of MSD extending its sewer lines to the site.

Joseph Kesler, Arlington Heights' city planner, testified that he was familiar with all petitions for annexation to Arlington Heights which had been granted within recent years. He submitted a map showing a number of annexations to Arlington Heights which had been accomplished within recent years. He testified that the area north of Dundee Road (the area of the subject property) "was not subjected to any changes for a number of years." He testified that Russell Ray, beneficial owner of the property in question, had approached him in the summer of 1978 indicating an interest in having the property annexed to Arlington Heights, the purpose of this testimony, apparently, being to indicate that Ray's desire to annex to Arlington Heights had preceded the condemnation, thus was not induced by that possibility.

Norman Toberman, consulting engineer, testified regarding drainage and sewer problems at the site. He testified that a creek runs through the property and it would be necessary to add fill in order to install a septic system. He did not consider disposing of waste only through a septic system but theorized as to the possibility of an on-site disposal system in addition to the septic system. His testimony assumed a commercial use of the site. Toberman conceded he had had no actual experience with the one-site disposal system he testified about and knew of no instance where such a system was being used in Cook or Lake Counties. His testimony as to the theoretical disposal of waste on-site was stricken as being too speculative.

Joel Michalik, a consulting engineer employed by Ferndale Heights Utility Company, testified as to the possibility of that utility furnishing service to the property. This is a small private utility located in Cook County and serving Cook County residents. The purpose of Michalik's testimony was to indicate the probability that Ferndale Utility would extend service to the site if MSD did not. He was allowed to express his opinion that Ferndale Utility had a reasonable capacity to extend its sewer and water facilities to the subject property if so requested. Being only a consulting engineer for that utility, he was not allowed to express his opinion as to whether the utility would actually so extend its service. He testified that the cost of sewer extension would be $50,000 and the cost of the water connection would be $91,000. If the property was found to be low, it would be necessary to install a lift station at a cost of $50,000. It would also be necessary to obtain a certificate of public convenience and necessity from the Illinois Commerce Commission. After receiving this certificate, the sanitary sewer permit would be sent to MSD for review and approval. The water main extension permit would need to be sent to the Illinois Environmental Pollution Agency for its review and approval.

It appears from Michalik's testimony that Ferndale Heights Utility Company had never extended its services into Lake County. Michalik testified that he did not know of any requests for Ferndale Utility to extend its services into Lake County. He testified that the wells serving Ferndale Utility were decreasing in level and that it was becoming more and more uneconomical to extract water from them, causing the utility to seek alternative sources of water supply.

Russell Ray, the beneficial landowner, testified that he had written to Talhami of MSD and to the Arlington Heights village engineer sometime in the latter part of 1978, before he was aware that the District intended to acquire the property. He asked their help in extending sewer facilities to his property. However, there is nothing to indicate any favorable consideration having been given by Arlington Heights to Ray's request.

Gerald Estes, land planner, testified that he was familiar with land use patterns in the vicinity of the subject property as of the date of condemnation, that the trend was from south to north in that area, and that there had been considerable development. He gave his opinion that the highest and best use of the property was for commercial development—B-1 and B-2, Offices and Stores. He did not make any investigation as to the most economical way to provide water and sewer at the site. His testimony was that there had not been any commercial annexations to Arlington Heights within 2½ miles of the condemned property as of the date of condemnation.

James Curtis, Jr., real estate appraiser, testified that based on the reasonable probability of rezoning the property to a commercial use the property would be worth $50,000 per acre.

After hearing this testimony, the trial court ruled that there was not sufficient evidence of the reasonable probability of annexation and rezoning of the subject property to commercial use to permit testimony as to the property's value based on such probability. The trial then proceeded.

James Dunn, real estate appraiser, testified that as presently zoned the property was worth $20,000 per acre. James Curtis, who previously testified the commercial value of the site was $50,000 per acre, testified that it was worth $20,000 per acre as residential property.

Richard Thacker, engineer and surveyor, testified for the District that a strip of the property was in a flood plain. Don Clark, real estate appraiser, testified for the District that the highest and best use of the property was as zoned—Suburban Estate—and he placed a value of $15,000 per acre on it. Neil King, real estate broker and appraiser, was of the same opinion as to the highest and best use of the property and he appraised the tract as having a value of $139,000, a little less than $15,000 per acre. King testified that he had considered comparable sales in the

vicinity. He based his valuation on the property being served by a well and septic system. William Schwandt, a real estate appraiser, also testified for the District. He valued the property at $15,000 per acre. His testimony as to comparable sales was objected to and the objection overruled.

In his testimony, Don Clark testified that he had considered comparable sales in arriving at his opinion of value. He also gave his background and qualifications and said that he had taken note of the creek running through the property and the lack of sewer and water in arriving at his opinion of value. Clark had previously testified to a value of $50,000 per acre, if rezoned to commercial use.

After consideration, the jury awarded the defendant $145,000, or approximately $15,000 per acre, as the just compensation for the taking of the property. The defendant appeals raising the following points: (1) The trial court erred in ruling that there was not sufficient evidence of the reasonable probability of rezoning to permit an expression of opinion as to the value based on annexation and rezoning to commercial use; (2) the trial court erred in refusing to consider evidence of annexations granted by the village of Arlington Heights after January 1, 1980; (3) the trial court erred in excluding evidence of "in process" MSD agreements; (4) the trial court erred in permitting valuation witness Clark to testify regarding specific sales, not in evidence, as comparable sales, which the witness did not actually participate in.

■■ With regard to the ruling that the testimony of valuation witnesses could not be based on the probability of annexation to Arlington Heights and rezoning to a commercial use, we think under the particular facts of this case that the ruling was correct. The purpose of the defendant here was clearly to present the property as a potential site for commercial development in order to enhance its present value. However, such development must be shown to be reasonably probable, rather than merely a desirable possibility. Moreover, it must be reasonably proximate in time and not based merely on the trend of future development. See *Lake County Forest Preserve District v. Petersen* (1981), 93 Ill. App. 3d 731, 735:

> "If the evidence falls short, as a matter of law, of showing any reasonable probability of the favorable action by the body authorized to act within the reasonably near future, the court shall exclude the evidence. *Lombard Park District*, 103 Ill. App. 2d 1, 9."

In this case, everything depended on annexation of the property by Arlington Heights within the reasonably near future. However, the only piece of land in Lake County which Arlington Heights had previously annexed was a relatively small portion of Terramere Subdivision, which was mostly in Cook County. There was a logical reason for this annexa-

tion in not wishing the subdivision to be located in two different counties, but it is not a persuasive reason for supposing land situated only in Lake County would be annexed. Moreover, that land was not changed as to zoning, but retained its original zoning of residential. At the time of the annexation, there was thought to be a possibility of obtaining an extension of MSD sewers to that portion of Terramere lying in Lake County. An exhibit to show that MSD had authorized negotiations with Arlington Heights on this subject was offered into evidence but was excluded by the trial court as being too tenuous since it had been hanging fire for some time and no agreement had been reached.

The valuation based on a commercial use would have to assume that the annexation would be made with commercial zoning, otherwise, the difference in value would not be significant. It appears from the testimony, however, that there were serious drawbacks to the development of the site for commercial purposes. Any worthwhile commercial development would clearly require sewer and water from a regular utility. The only attempt of a witness to hypothecate an on-site sewer system was so tenuous, the testimony was stricken. However, the only two sources of sewage treatment were MSD, which would have to depart from an established policy, and Ferndale Heights, whose territory was chiefly in Cook County and would have had to clear hurdles with MSD and the Illinois Environmental Pollution Agency before being granted permission for the extension of sewer and water lines to the site. Moreover, the cost would have been formidable—about $141,000 as noted above and a possible additional $50,000 for a lift station. Also, the extension of water service to the site was questionable, based on Mr. Michalik's testimony because of Ferndale Utility's limited well capacity. It would hardly seem logical for Ferndale Heights, a small Cook County utility, to furnish water to Lake County undeveloped acreage at a time when it was seeking alternate sources of water to properly serve its own Cook County customers. Thus it appears from the testimony at the preliminary hearing that the cost of making the property ready for commercial development would greatly diminish the profitability of doing so. In addition to that, while the creek running through the subject property did not, in the opinion of several witnesses, materially detract from the value of the property for residential purposes, it did obviously diminish its desirability as a commercial site. In sum, it would appear on the basis of all the testimony and the exhibits that the annexation of this tract of land and its rezoning to commercial use was less than probable at the time of the condemnation.

The defendant contends, however, that the controlling question in the preliminary determination as to whether there is sufficient evidence to allow opinion of value based on the reasonable probability of annexation

and rezoning, is the apparent flexibility of the municipality's zoning ordinance and policies. If, the defendant contends, the policy with regard to zoning is flexible and a great majority of rezoning and annexation petitions have been approved within the recent past by the municipality in question, that should be taken as an indication that the present case will also be given favorable consideration. On this basis, the defendant argues, it should be given the opportunity to present its valuation based on such theory. In support of this theory the defendant invokes the cases of *Department of Public Works & Buildings v. Rogers* (1968), 39 Ill. 2d 109, and *Department of Public Works & Buildings v. An Association of Franciscan Fathers* (1977), 69 Ill. 2d 308. These cases, while reflecting the doctrine of flexibility as to the probability of rezoning, are distinguishable from the case before us. In *Franciscan Fathers*, it was a question of changing a zoning classification because of the explosive growth of a very new community and the dynamic change in the character of Route 83. The petition to condemn was filed in 1970 during a period of burgeoning growth of the community of Oak Brook. During the period from 1967 to 1972, there had been five requests for rezoning and three of these had been approved and the commercial possibilities of the area were rapidly accelerating. Moreover, the existing zoning of the subject property in that case was "Institutional" and the opinion of the supreme court noted that there was "evidence that the 'Institutional' zoning classification attached to the Franciscans' property was *provisional*." (Emphasis added.) 69 Ill. 2d 308, 315.

■■ ■ Moreover, in that case there was no complication caused by the preliminary step of annexation from another county, such as in the case before us. Nor was there any question of having to extend sewer and water facilities—it was purely a question of changing a zoning classification which was described by the appellate court as "interim" and by the supreme court as "provisional." (*Department of Public Works & Buildings v. An Association of Franciscan Fathers* (1976), 44 Ill. App. 3d 49, 54; 69 Ill. 2d 308, 315.) In *Rogers*, the probability of the rezoning contended for being granted was supported by evidence of a recent ordinance rezoning a 50-acre tract on the same side of the highway only one-half mile away from the property in question, from residential to commercial. Again, there was no problem of annexation from another county nor any question of extending water and sewer facilities. If a municipality's zoning problems are shown to be flexible, we agree that it is a matter to be taken into account in considering the probability of annexing and rezoning a particular tract of land, but the proposition must have merit of its own to begin with. Where a mere zoning change is needed to give the property its desired status and value, that is one thing, but in the case before us, unlike *Rogers* and *Franciscan Fathers*, much more was

required to give the property in question a value as commercial property. "Flexibility" in a municipality's zoning approach does not alter the economic and geographical facts as to a particular piece of property, and the fact that the legislative body's policy is flexible rather than rigid does not shift the burden of proof of the landowner to show a *probability* not a mere *possibility* of rezoning within the reasonably near future. Almost anything is possible in our dynamic society—good possibilities as well as bad—and it would make a farce of the theory of the probability of rezoning if it rested only on a mere possibility. In the case before us, in order to permit such evidence, it would be necessary to conclude that because Arlington Heights had approved various zoning changes within its own borders or had annexed other property contiguous to it within Cook County, that it would probably annex farm land in Lake County and change it to commercial zoning even though such land was presently unsuited to such use because of lack of water and sewer and the existence of a flood plain thereon. We do not think the evidence adduced at the preliminary hearing was sufficient to turn this into a reasonable probability within the reasonably near future. While opinions of value based on the reasonable probability of rezoning have been allowed in many instances, as we have noticed, the court's comments in *Lombard Park District v. Chicago Title & Trust Co.* (1968), 103 Ill. App. 2d 1, 9, are still appropriate here:

> "It normally has been held that the burden of proof of the reasonable probability of a change of zoning is on the landowner, at least where such change would enhance the value of the property. 9 ALR3d 291, 323. As to the rest of the expert witnesses' testimony: it is for the court to make the preliminary determination of whether there is sufficient evidence of a reasonable probability of rezoning to permit them to testify to market value based on such a probability. If so, it is for the jury to determine the weight to be given such expert's conclusions as to value based upon the reasonable probability of such rezoning. If the court determines that the evidence falls short, as a matter of law, of showing any reasonable probability of rezoning within the reasonably near future, it must then exclude all such evidence and opinions of value based upon a use permitted only by the rezoning."

In this case, we think the trial court was within its discretion in determining that the evidence fell short of that necessary to base a value on the probability of rezoning.

■■ A second point of appeal is that the court erred in excluding evidence of annexations approved by Arlington Heights after January 1, 1980. It will be noted that the condemnation petition was filed on April 4, 1979. The general rule is that the value of the condemned property is to be

determined as of the date of the filing of the petition to condemn, so that the trial court's refusal to allow into evidence a map showing annexations some eight or nine months subsequent to the date of taking, in order to enhance the probability of annexation or rezoning is in keeping with the general rule. (See *City of Chicago v. Riley* (1959), 16 Ill. 2d 257; *City of Chicago v. Blanton* (1958), 15 Ill. 2d 198; *City of Chicago v. Albert J. Schorsch Realty Co.* (1970), 127 Ill. App. 2d 51.) In *Riley*, the court said: "It is well settled that the value of the property must be determined as of the time of filing the petition for condemnation." *City of Chicago v. Riley* (1959), 16 Ill. 2d 257, 264.

■■ The defendant invokes the recent case of *Lake County Forest Preserve District v. Petersen* (1981), 93 Ill. App. 3d 731, but that case does not concern the probability of annexation and rezoning but, rather, the probability of the defendant being granted an EPA permit to operate a sanitary landfill on his land. The issues in the case as set out by the court were "whether the doctrine of reasonable probability should be extended to include the issuance of an EPA permit and, if so, whether the court erred in not allowing submission to the jury of valuation testimony based on that doctrine." (93 Ill. App. 3d 731, 733.) The defendant offered evidence of several sites having been granted EPA permits for the same use, but the opinion does not indicate that any such permits were considered which were granted eight or nine months after the petition to condemn. The only permit actually mentioned in the opinion was one filed a week *before* the filing of the condemnation petition. In any event, no definite prejudice to the defendant was shown by the trial court's ruling that annexations approved in 1980 would not be admitted into evidence, although the map introduced by the witness, Estes, was admitted as an exhibit. Since it was conceded by Estes that there had been no 1980 annexations or, in fact, any annexations to Arlington Heights within a mile of the condemned property over a period of several years, we see no prejudice to the defendant in the court's limited exclusionary ruling. Joseph Kesler, the village planner, also testified that there had been no recent annexations within two miles of the condemned parcel and the only annexation ever granted of Lake County property was that part of Terramere Subdivision which spilled over into Lake County and was principally in Cook County.

■■ The defendant also contends it was prejudiced by the exclusion of evidence of a motion made by MSD Board of Commissioners authorizing its staff to enter into negotiations with Arlington Heights regarding extension of its service to that part of Terramere lying west of Arlington Heights Road in Lake County. This evidence was objected to by the District on the ground that there was no showing that any contract had ever been entered into and the District counsel asserted that no agreement

had ever resulted from the motion authorizing MSD to negotiate with Arlington Heights. The trial court ruled that mere authority to negotiate with Arlington Heights some two years previous to the condemnation petition—which had never been consummated by any agreement between the parties—was too speculative as bearing on the subject property's valuation and could not be considered as evidence. We think this ruling was justified. Defendant's counsel did not attempt to prove anything more than a mere motion by the MSD board to allow negotiations. The negotiations were never shown to have gone beyond the authority to negotiate and this proved nothing as to extension of MSD service outside of Cook County. Moreover, defendant's witness, Norman Toberman, a consulting engineer, testified that the property was too far away for it to be practicable for MSD to service it. Therefore, the trial court's ruling did not prejudice the defendant, as the subject property was not likely to be served by MSD in any event.

Lastly, the defendant contends that error was committed in allowing the District's witness, Clark, a real estate appraiser and broker, to testify regarding certain sales of property in the vicinity of the condemned land. Clark testified that among the factors he considered in arriving at the value of the property were "comparable sales that were sold on the open market of the most similar properties that I could find." Objection was made that there had been no evidence to show that these sales were comparable to the site and the trial court ruled that the sales could be identified but no price mentioned. Clark then described in general terms several sales which he considered in arriving at his evaluation of the subject property, without giving any prices. Only one of these sales was offered into evidence as a comparable sale. The defendant cites this court's opinion in *Forest Preserve District v. Harris Trust & Savings Bank* (1969), 108 Ill. App. 2d 65, as a basis for the contention that it was prejudiced in that by mentioning five sales by general description without stating the sales price, the witness gave the jury the impression that all five pieces of property were comparable sales and were sold in the price range of his valuation. At trial, the defendant's objection seemed to be on the basis of the hearsay aspect of Clark's testimony, since he had not been personally involved in the sales he mentioned. As to this aspect of Clark's testimony we believe the trial court was correct in overruling the objection so long as the prices of these sales were not stated. In *Harris*, a similar objection was made and sustained by the trial court and this court, upon review, found that the trial court had been in error in excluding the testimony. Noting that two witnesses whose opinion of value were objected to by the trial court on the basis that it was partly founded on comparable sales of which they had no personal knowledge, this court said:

"Further, the fact that the witnesses were aware of sales in the area in which they did not participate, and that they based their opinions, in part, on this knowledge, does not render their opinions inadmissible. The trial court stated that it is proper for a witness to render an opinion of value if a witness has hearsay knowledge of other sales as a part of his background knowledge, but that it is improper to render an opinion if a witness has hearsay knowledge upon which he bases his opinion. Under this statement of the law, we conclude that the most that can be said with reference to the testimony of Collins and Fitts is that they may have included in their basis for an evaluation opinion, hearsay knowledge of other sales. The evidence certainly does not indicate that hearsay knowledge was the basis of such opinions." (108 Ill. App. 2d 65, 72.)

This court's opinion continued, "[t]o say that his opinion, in part, is not based on this knowledge or information because it merely is a part of his general background and experience, is an exercise in pettifoggery." 108 Ill. App. 2d 65, 72-73.

■■ We conclude, therefore, that the objection to Clark's testimony, based on hearsay, because it reflected consideration of comparable sales he did not personally participate in, is not a valid objection. His opinion of value was based on several factors in addition to the comparable sales he mentioned and was not arrived at solely on the basis of hearsay knowledge of other sales in the vicinity.

■■ However, we agree with the defendant that the sequence of Clark's testimony was improper. He first testified as to his qualifications and then as to the factors he considered in arriving at his opinion of value. Among these he said he considered several sales in the vicinity of the property in question. Upon objection, the trial court ruled he could mention these sales but no prices. Clark then described the sales he had in mind in general terms as to location and size or acreage without giving any prices. After that he was asked and expressed his opinion of value of the subject property. This sequence was criticized in *Harris*, this court saying:

"The sequence of the testimony of Fitts was properly subject to criticism. He first testified with reference to his qualifications, then described the other surrounding properties which he had considered in arriving at his value opinion of the subject property. His opinion of the value of the subject property should logically have followed his testimony concerning his qualifications. Such sequence would have obviated part of the objections raised by the defendants." 108 Ill. App. 2d 65, 70.

While the same improper sequence was followed here, we do not consider it to amount to reversible error. We note that in *Harris*, the ground for reversal was not this improper sequence of testimony, which

was raised by the defendants, but rather the plaintiff's objection to the exclusion of the testimony of Fitts and Collins as being hearsay. This court, while its opinion in *Harris* did observe that the sequence of testimony was subject to criticism, reversed the trial court on the plaintiff's contention that the testimony of Fitts was excludable as being hearsay.

■■ In the case before us, while the sequence of testimony was no doubt improper, as noted in *Harris*, we do not consider it to have been of serious impact in the defendant's case. Besides Clark, two other witnesses testified for the District as to value. Neil King testified as to his qualifications, the various factors he had considered at arriving at a valuation of the subject property, and said that among them were comparable sales in the vicinity. He then gave his opinion as to the value of the property per acre. His valuation was the same as Clark's and the sequence of his testimony was correct. The witness Schwandt testified generally as to his background, his inspection of the property and the factors he had considered in arriving at an opinion of value. He did not mention comparable sales. He also gave approximately the same valuation as did Clark and King based on residential use. Thus two other witnesses with substantial qualifications and experience, noting other factors affecting the valuation of the property, arrived at approximately the same valuation per acre as did Clark. Moreover, the defendant's own two witnesses only appraised the property at $20,000 per acre for residential purposes. Thus, the difference in value was not critical as to residential use. It is clear that the main difference of opinion in this case is as to whether the property should be given a commercial value or one based on the residential zoning then existing. Clark was only one of three qualified District witnesses who arrived at the valuation of approximately $15,000 for residential purposes. Under these circumstances the effect of the improper sequence of testimony concerning residential value was not seriously prejudicial.

We are of the opinion that the case was fairly tried and that the trial court properly excluded the defendant's witnesses from giving an opinion of value based on the reasonable probability of annexation and rezoning of the subject site. There was little foundation for the evaluation based on the land being annexed and rezoned within the reasonably near future. The amount awarded by the jury was well within the range of the testimony.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and REINHARD, JJ., concur.