556 A.2d 1102

**J. WILLIAM COSTELLO PROFIT SHARING TRUST**

v.

**STATE ROADS COMMISSION OF THE STATE HIGHWAY ADMINISTRATION.**

**No. 101, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 1, 1989.

David D. Freishtat (Nancy P. Regelin, Ann H. Sablosky, Ian C. Ballon and Schulman, Rogers, Gandal, Pordy & Ecker, P.A., on the brief), Rockville, for appellant.

Henry F. Leonnig, Asst. Atty. Gen., Sp. Counsel of Upper Marlboro (J. Joseph Curran, Jr., Atty. Gen. and Nolan H. Rogers, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr., Associate Judges of the Court of Appeals of Maryland (retired), Specially Assigned.

COLE, Judge.

In this condemnation case, we shall decide whether a trial judge correctly excluded an executory, contingent land sales contract from the jury's consideration in determining the award.

Dr. William Costello acquired a 37.5 acre tract in Prince George's County in 1971 which he planned to develop for both residential and commercial uses. The property was zoned residential urban (RU) which is a comprehensive design zone requiring a three stage process to bring it to development. The first step involves a zoning map amendment. The second step requires a comprehensive design plan and a preliminary plat of the subdivision to be approved by the Maryland–National Capital Park and Planning Commission (PPC). The final step requires that the

PPC approve, for each of the uses on the property, a specific design plan.

In this case, the zoning map amendment was adopted in 1975 by District Council Resolution CR 108–1975. Thirty-seven acres were set aside for the building of townhouses, and the balance, a little less than half an acre, was set aside for convenience commercial use, with a proviso that only a 3,000 square foot building could be constructed thereon.

Development of the property, however, was subjected to even further restrictions and contingencies. Costello entered into a covenant with the City of Bowie, agreeing that any building on the convenience commercial site would be visually screened from the roadway by an opaque fence or heavy plant screen, and that no sign could be erected without the city's written authorization. In addition, Costello encumbered the property by agreeing that no commercial development could proceed without the consent of Artery Organization, Inc., a neighboring landowner.

Costello then entered into a contingent contract for the sale of the tract of land to Woodbridge Construction Company, Inc., for a $100,000 sales price. The agreement contemplated a commercial office facility of not less than 6,000 square feet, and contained three basic contingencies, to wit, (1) the property needed to be, in some fashion, rezoned to permit the commercial office facility envisioned by the contract; (2) Artery had to consent to any construction; and (3) 11,000 square feet of land needed to be acquired and dedicated for a public street to serve the convenience commercial site. Failure of any of these contingencies entitled Woodbridge to terminate the agreement.

After the City of Bowie refused to recommend Costello and Woodbridge's request for a 6,000 square foot commercial office building, the parties amended their contract, reducing the square footage to 3,000 and the purchase price to $75,000, and requiring that the purchaser obtain specific design approval and the seller obtain Artery's consent.

On June 9, 1983, the parties submitted a specific design plan to the PPC. The State Roads Commission of the State Highway Administration (the "State") indicated to the PPC its intention to acquire the parcel and asked that the specific design plan be denied. By letter dated November 10, 1983, Costello withdrew without comment the request for specific design approval.[1]

On May 16, 1985, the State filed in the Circuit Court for Prince George's County a condemnation petition against the predecessor to petitioner, Robert D. Costello Associates, Inc., Profit Sharing Trust ("Costello"),[2] to condemn the subject property for reconstruction of the Route 50/197 Interchange. The State deposited with the court a check in the amount of $34,850.00, claiming that sum represented the fair market value of the condemned property. In an answer filed on June 14, 1985, Costello admitted the necessity of the taking but denied that the escrowed amount represented the property's fair market value.

The Honorable Albert T. Blackwell, Jr., now a member of this Court, presided over a jury trial in the Circuit Court for Prince George's County at which two real estate appraisers testified on behalf of the State and two witnesses testified for Costello as to the property's value. Mr. Melville Peters testified on behalf of the State that six comparable commercial properties in the area had been sold for $4.03 per square foot, which would amount to $76,232.00 for the subject property. However, because he perceived numerous limitations on the commercial use of the condemned property, Peters appraised it to be worth $2.00 per square foot, or a total of $36,116.00. Charles E. McLane, Sr., the State's second appraiser, valued the property at $35,000.00 based on sales of residential townhouses in the area.

---

1. While the second step in the three phrase process was approved in 1979, approval for the third step has yet to be obtained.

2. By deed dated December 12, 1983, Robert D. Costello Associates, Inc., Profit Sharing Trust conveyed the property which is the subject of this suit to William Costello, M.D., P.A., Profit Sharing Trust.

Dr. William Costello, petitioner's trustee and principal beneficiary, testified on behalf of the petitioner. Through his testimony, petitioner attempted to introduce the 1983 sales contract for the condemned property, which as amended provided for a $75,000.00 sales price. The court refused to admit the terms of the agreement into evidence because the contract's several contingencies were never satisfied. As noted, the contract called for the construction of a commercial office facility which was not a permitted use under existing zoning. Nonetheless, Dr. Costello testified that in his opinion the property was worth $90,000 on the date of the taking. Petitioner also called to testify an independent appraiser, Richard Pierce, who opined a value of $85,761.00.

The matter was submitted to the jury, which awarded Costello $45,000.00. The Court of Special Appeals affirmed the judgment of the court in an unreported opinion. We granted Costello's petition for certiorari to review a single issue: Is it contrary to the public policy requiring just compensation to exclude an unconsummated land sales contract from evidence in a condemnation proceeding?

█ Costello argues that the trial court erred in denying the admission of the contract of sale for the property as evidence of its fair market value. The State counters that the trial court did not err in refusing to admit the contract because it was so conditional that it was more akin to an option contract than a binding contract. This distinction is crucial. "[I]n a condemnation case, ... an offer to purchase real property is not admissible to prove its value." *State Roads Comm. v. Kuenne,* 240 Md. 232, 235, 213 A.2d 567 (1965). Unlike consummated and binding contracts, offers are inadmissible to prove the value of land because "the value of an offer depends on too many considerations to allow it to be used as a test of the worth of property." *Horner v. Beasley,* 105 Md. 193, 197, 65 A. 820 (1907), quoted in *State Roads Comm. v. Wyvill,* 244 Md. 163, 172, 223 A.2d 146 (1966). The same reasoning ordinarily mili-

tates against the admissibility of option contracts. *See Wyvill,* 244 Md. at 178, 223 A.2d 146.

In *Wyvill,* this Court considered the admissibility of executory (i.e., unconsummated) contracts of sale for properties comparable to the condemned real estate. We stated:

> The reasons for the admissibility of prior contracts made by the owner of the condemned property may well be applicable in considering the question of the admissibility of contracts of sale for comparable properties. The chances of fraud seem to be no greater; two strangers to the condemnation litigation are involved instead of one. It is true that as to a prior contract for the sale of the condemned land the owner is generally on the stand, subject to cross-examination, but the way is always open to opposing counsel to attack the bona fides of contracts as to comparable lands. Modern pre-trial discovery procedure, properly used, affords opportunity for the investigation of any such contracts which will be offered in evidence. *Unlike offers and options, contracts for the purchase of land are binding obligations, not lightly ignored; the fact the contracts have not progressed into sales seems to go to the weight of the evidence rather than to its sufficiency.*

244 Md. at 178, 223 A.2d 146. [Emphasis added].

Accordingly, the *Wyvill* court held that evidence of a contract on comparable property was admissible to test an expert's valuation on cross-examination. Moreover, once admitted on cross-examination, subsequent witnesses for the property owner could refer to the contract as the basis for their opinions. 244 Md. at 179–80, 223 A.2d 146.

In *Wolff v. Commonwealth of Puerto Rico,* 341 F.2d 945 (1st Cir.1965), the property owner contended that the trial court erred when it excluded evidence that prior to condemnation the property had been contracted to be sold at a high price conditioned upon obtaining a new zoning classification. The Commonwealth argued in opposition that the contingency on the contract rendered it an option and, therefore,

inadmissible as proof of the property's value. The First Circuit ruled the contract admissible and explained:

> When there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative. Nichols on *Eminent Domain,* 3rd ed., Vol. 4, § 12.322, pp. 238–243.

*Id.* at 946–7.

Costello emphasizes that under *Wyvill,* the contingencies in the unconsummated land sales contract affect only the *weight* of the evidence but not its admissibility. The petitioner also points out that the value of the land per the contract is reliable evidence because the price was determined in arms-length dealings long before the issue of condemnation arose. Costello suggests that the court should have let the jury determine as a question of fact whether the contingencies would have been met.

Costello's representation of our holding in *Wyvill* is misleading. In that opinion we cited a number of cases holding "that the price fixed in an unconsummated contract of sale entered into before the condemnation by the owner of the condemned property with a third person is admissible as substantive evidence of the value of the property." Quoting *United States v. Certain Parcels of Land, Etc.,* 144 F.2d 626, 630 (3d Cir.1944), we summarized the rationale of those cases:

> It is true that the contract had not been consummated and that, as argued by the government, reception of such evidence makes it possible for a landowner, learning that condemnation of his property is likely, to enter into a collusive agreement of sale so as to manufacture evidence in support of an exorbitant claim.... Yet evidence of a bona fide sale, *otherwise relevant,* should not be excluded because of the possibility [of collusion]. Such objec-

tions go to the weight of such evidence rather than to its admissibility.... [Emphasis added].
244 Md. at 177, 223 A.2d 146.

■ The key feature distinguishing the case at bar from *Wyvill* is that the highly contingent nature of Costello's unconsummated contract, and the absence of evidence that those contingencies could be fulfilled, deprives it of the relevance that characterized the unconsummated contract in *Wyvill.* Costello's arguments fail to persuade us otherwise.

Specifically, Costello contends that the contingencies should only affect the weight of the evidence to be assigned by the jury, this being "the clear rule of *Wyvill.*" We disagree that *Wyvill* stands for any such proposition. Rather than addressing the evidentiary validity of a contingency-laden executory contract, the *Wyvill* Court considered a non-contingent executory contract. Consequently, its reference to the unconsummated nature of a contract bearing on sufficiency and not admissibility was based upon the possibility of collusion inherent in an *executory* contract, and not on any consideration of a contract's *contingent* nature. Indeed, the *Wyvill* Court, quoting *Brush Hill Development, Inc. v. Commonwealth,* 338 Mass. 359, 155 N.E.2d 170 (1959), drew a sharp distinction between "binding [yet executory] agreements of purchase and sale ... [and] options, or *contracts based upon so many contingencies as to be meaningless on the issue of fair market value.*" 244 Md. at 175, 223 A.2d 146. (Emphasis added). That statement foreshadowed our holding today that the latter category of contracts may lack relevance in a condemnation case. In sum, the *Wyvill* Court merely held that it should be the function of a jury to determine whether collusion provided the impetus for creation of an unconsummated contract.

On the other hand, a jury's function does not encompass determining matters of evidentiary relevance. Rather, such decisions reside within the trial judge's sound discretion.

As we see it, determining whether the contingent contract stood a reasonable probability of becoming non-contingent, and thus probative of the property's value, bore upon the relevance of the proposed evidence, and was properly decided by the trial judge.

■ While holding that the trial court did not err in finding that Costello failed to adduce the requisite proof of the contingent contract's relevance, we recognize that the fact that a contract contains contingencies does not *ipso facto* render the contract inadmissible to establish a property's fair market value. To the contrary, if a litigant establishes evidence to support a finding of a reasonable probability that the contingencies would be fulfilled but for the state's taking, then the contract's relevance and admissibility would be established. *See Lake County, Etc. v. Bank & Trust Co., Etc.*, 106 Ill.App.3d 856, 62 Ill.Dec. 487, 436 N.E.2d 237, 243, *cert. denied* 507 N.E.2d 1326 (1982) (landowner bears the burden of proving "a *probability* not a mere *possibility* of rezoning within the reasonably near future.")

In *State Roads Comm. v. Warriner*, 211 Md. 480, 484, 128 A.2d 248 (1957), we stated that "evidence of a reasonable probability of a change in zoning classification within a reasonable time may properly be admitted and its influence upon market value at the time of the taking may be taken into account." [3] *Accord, Burton v. State Roads Comm'n,*

---

**3.** We see no essential difference in the application of the doctrine of *Warriner* to zoning reclassification and its application to approval by a Planning Board of some modified plan in keeping with approved zoning restrictions. In both instances we are concerned with the use to which the subject property may be put and the reasonable probability of the proper authority approving a change in that use.

Thus, whether there is a likelihood that a zoning reclassification may in the near future be granted or that a condition precedent (specific design plan) to the development of land may be approved, the likelihood may be considered to have an effect on present market value if sufficiently likely to occur. Of course, if the likelihood is not likely, the trial judge will not abuse his discretion in denying admission of evidence bearing on this point.

251 Md. 403, 408, 247 A.2d 718 (1968), wherein we noted that in valuing property subject to condemnation proceedings, a jury should be allowed to consider a prospective zoning change only if there is a *"reasonable probability* of a change in zoning classification *within a reasonable time,"* [emphasis in original] and cautioned that "consideration must [also] be given to its present zoning status." *See also Oak Brook Dist. v. Oak Brook Dev.,* 170 Ill.App.3d 221, 120 Ill.Dec. 448, 524 N.E.2d 213 (1988) (it is for the trial court to make the preliminary determination, as a matter of law, that there is sufficient evidence of a reasonable probability of rezoning to permit testimony as to market value based on such a probability); *IIT Realty Corp. v. State,* 120 A.D.2d 706, 502 N.Y.S.2d 504 (1986) (to demonstrate a reasonable probability that the zoning would be changed, a party must present more than a hypothetical possibility or mere speculation).

For an example of evidence sufficient to meet the reasonable probability test, see *Warriner,* wherein we stated that:

> Without reviewing the testimony in detail, we think that the showing as to the growth in population of the Towson area, the marked expansion of its commercial area outwards along the York Road towards the Wolsh tract and the demand for property for industrial use in the Towson area, the proximity of a tract already zoned as light industrial, the adaptability of the tract to such use, two widenings of the York Road and the opening of a part of the Baltimore–Harrisburg Expressway in the vicinity, and the opinions of expert witnesses that the highest and best use of the Wolsh tract was for light industrial use, were sufficient to meet the test of at least a *reasonable probability of reclassification within a reasonable time.* (Emphasis added).

211 Md. at 486–87.

Similarly, the Supreme Court of Delaware described such a scenario of reasonable probability of rezoning in *State v.*

*Parcel No. 1—1.6401 Acres of Land, Etc.*, 243 A.2d 709, 712 (Del.1968):

The Owners adduced the testimony of an expert witness who stated that the highest and best use of the property was commercial or industrial; that a non-conforming commercial use of part of the property had been made for some time; that he had much experience, during 30 years as a real estate broker, in making applications to the Zoning Commission for the rezoning of similar properties from residential to commercial; that he did not know of one such application that had ever been disapproved. The witness concluded that, based upon his knowledge of the decisions of the Zoning Commission over the years regarding land such as is involved in the instant case, he had "no doubt at all but what [sic] it would be changed" from residential to commercial. Although there was evidence to the contrary, *such testimony was sufficient, in our view, to support a finding of reasonable probability of rezoning,* and thus was sufficient to warrant submission of the issue to the commission. [Emphasis added].

As we see it, if no reasonable probability of fulfillment within a reasonable time of a condition precedent to development appears from the evidence, a jury should not be allowed to base its valuation of the property upon a speculative and improbable contingency. A remote possibility of approval of a proposed use simply lacks the probative force necessary for relevance in determining a property's value.

In the case at bar, Costello's own witness admitted that the zoning did not permit building the commercial office facility contemplated under the contract. Further testimony indicated that it also would be unlikely for Costello or any successor to obtain approval of the specific design plan to build the anticipated project. Under these circumstances, we hold that the trial court properly excluded the contract as evidence of the property's value.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY THE COSTS.