[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, William P. Gelinas, appeals the decision of the defendant West Hartford Plan and Zoning Commission ("PZC") approving the application of defendants Leonard T. Chase and Capitol Region Education Council ("CREC") for renewal of a special use permit to conduct a high school vocational program. CT Page 6763
By application dated April 10, 1990 and received by the PZC on April 11, 1990, the applicants CREC and Leonard T. Chase requested renewal of a special use permit for public school and governmental use at 16 Oakwood Avenue for a period of five years or longer.
The special use permit and site plan[1] upon which the renewal is based was approved by the PZC on July 11, 1988, subject to the following conditions: (1) that the permit is approved for a two-year period and that renewal be made prior to July 11, 1990; (2) that the students not be permitted to drive their own vehicles to school or park on the premises; (3) that the school be limited to no more than 50 students, and not more than 35 the first year; (4) that a sign be posted forbidding parking in front of the school between the hours of 7:30 a.m. and 4:30 p. m.; (5) that the property owner file a statement on the land records that an existing parking variance of record is not or will not be increased or decreased by approval of the special use permit application. The PZC also states in a letter to CREC's executive director dated July 19, 1988 that the proposed use complies with the zoning requirements of the Code of the Town of West Hartford ("Code")[2], specifically section 177-42(A)(5)[3], provided the use is operated and maintained in accordance with the conditions set forth above. Documents submitted with the renewal application and testimony adduced at the public hearing respecting same indicate that the five conditions have been complied with.
The renewal application was considered by the PZC at a meeting held on May 7, 1990, at which time the matter was set for public hearing on June 4, 1990. The plaintiff herein is the only person who spoke in opposition to the renewal application at the public hearing. Decision on the application was deferred to July 2, 1990 to allow the applicants to comply with the parking lot striping requirement mandated by the 1988 site plan.[4]
The renewal application was approved on July 2, 1990 with the following conditions: (1) all prior conditions of the special use permit remain in full force and effect; and (2) the permit is renewed for a period of five years and application for renewal must be made before expiration of that period. The PZC in its letter of approval also found that the application complied with section 177-42(A)(5)(a)-(c) (see footnote 3) of the Code.
The plaintiff appeals the granting of the renewal special use permit on the basis that the PZC acted illegally, arbitrarily and in abuse of its discretion in that (1) the PZC approved a site plan which, when implemented, results in a physical encroachment on the plaintiff's property; (2) the PZC CT Page 6764 failed to adequately investigate the conflicting claims of right with respect to land usages contained on the applicants' site plan; and (3) the parking arrangement approved by the PZC is improper. The trespass and conflicting claims of right issues are not briefed by plaintiff and, thus, are deemed abandoned. A.P. W. Holding Corp. v. Planning and Zoning Board,167 Conn. 182, 183, 355 A.2d 91 (1974).
The defendants in this action are the PZC; Cynthia Kaplan, Chairman of the PZC; Leonard Chase; CREC; John J. Allison, Jr., Executive Director of CREC; and Nan Glass, Town Clerk. They have filed answers and various special defenses. Defendant Chase's special defense relates to the trespass claim and is not relevant here. The defendant PZC, Glass and Kaplan assert four special defenses: (1) claims of error are waived because not brought up at time original permit acted upon; (2) (3) claims of error barred by res judicata and collateral estoppel; (4) mootness. Defendants CREC and Allison assert three special defenses which are identical to the first three special defenses of defendants PZC, et al. Because of the disposition of the appeal, the court need not discuss these special defenses.
Plaintiff's motion to correct and/or supplement the administrative record was denied on October 10, 1991, Schaller, J. Defendant PZC's motion to supplement the record on appeal was granted on November 26, 1991, Schaller, J.
TIMELINESS OF APPEAL
An appeal from a decision of a zoning agency must be commenced by service of process within fifteen days from the date the decision of the agency is published. General Statutes8-8 (b). Failure to timely file an appeal deprives the court of subject matter jurisdiction to hear the appeal. Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545 (1989). Service of process shall be made on the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. General Statutes 8-8 (e). Service of process is also to be made on the applicants, but failure to serve same within fifteen days does not deprive the court of jurisdiction. General Statutes 8-8 (f).
An evidentiary hearing was held on May 19, 1992 before this court to determine whether this appeal was commenced within the fifteen day limitations period. An Affidavit of Publication was produced indicating that the decision of the PZC was published on July 6, 1990. Service of process was made on the Chair of the PZC on July 21, 1990. Process was served on the West Hartford Town Clerk on July 24, 1990. Although service on the Town Clerk was not made until the eighteenth day, the appeal is CT Page 6765 saved by General Statutes 52-593a which stated:
 (a) Except in the case of an appeal from an administrative agency governed by section 4-183, a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to an officer authorized to serve the process or is personally delivered to the office of any sheriff within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery.
 (b) In any such case the officer making service shall endorse under oath on his return the date of delivery of the process to him for service in accordance with this section.
See Flaim Enterprises, Inc. v. Town Plan and Zoning Commission,3 Conn. L. Rptr. 291, 292 (February 27, 1991, Celotto, J.) (General Statutes 52-593a applies to zoning appeals); Standish v. Town of Rocky Hill Zoning Board of Appeals, 4 CSCR 68, 69
(December 2, 1988, O'Connor, J.) (General Statutes 52-593a would have given appellant additional fifteen days within which to file appeal); Stankiewicz v. Zoning Board of Appeals,2 CSCR 559, 560 (April 21, 1987, Hurley, J.), aff'd. on other grounds,15 Conn. App. 729, 546 A.2d 919 (1986), aff'd., 211 Conn. 76,556 A.2d 11024 (1989) (applied General Statutes 52-593a to zoning board appeal). Cf. Searles v. West Hartford Board of Education, 4 CTLR 470, 471 (July 29, 1991, Purtill, J.) (General Statutes 52-593a does not apply to administrative appeal because appeal is not "cause or right of action").
Since the sheriff received the process on July 19, 1990, that is, within the fifteen day limitations period, and served the process in a timely fashion as required by General Statutes52-593a, this appeal is timely filed.
AGGRIEVEMENT
The plaintiff is statutorily aggrieved as he is the owner of property which abuts the subject property. General Statutes8-8 (a)(1), (b).
LEGAL ANALYSIS
This appeal relates to a renewal of a special use permit which was approved in 1988 for a period of two years. Before reaching the merits of plaintiff's appeal, the court notes the CT Page 6766 absence of authority for the PZC's policy of granting special use permits for a limited period of time. General Statutes 8-2
authorizes the designated local agency to grant special permits "subject to standards set forth in the [municipality's] regulations and to conditions necessary to protect the public health, safety, convenience and property values." The Code permits the planning commission to impose conditions on the approval of the special use permit which are "essential" to making a positive finding that certain standards set forth in section 177-4a[A](5)(a)-(c) are met. "A special permit. . . permits an applicant to put his property to a use which is expressly permitted under the regulations so that the conditions under which a special exception is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by the regulations, it is void." Beckish v. Planning Zoning Commission, 162 Conn. 11,15, 291 A.2d 208 (1971). See also Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 354,232 A.2d 916 (1967) (unauthorized condition may be revoked and set aside). See also Tondro, Connecticut Land Use Regulations at 79.
There is no legislative authority permitting the PZC to place time restrictions on special use permits. It is arguable that a time limitation is not a "condition." In Scott v. Zoning Board of Appeals, the New York Appellate Court held that a special permit could not be issued subject to a time limitation since "such limitation is not a condition to a special permit but results in a temporary special use permit" for which there is no legislative authority. 451 N.Y.S.2d 499, 500, 88 App.Div.2d 767
(4th Dept. 1982).
Room and Board Homes and Family Care Homes, Operators and Owners v. Gribbs, similarly held that a special exception could not be subject to a time limitation. 67 Mich. App. 381,241 N.W.2d 216, 218 (1976). That court reasoned that since the conditions authorized by ordinance are limited to those related to the use of land, a special exception cannot be subject to time limitations. The reasoning of Scott and Gibbs is persuasive. See also 6 Rohan, Zoning and Land Use Controls sec. 44.04[1] at 44-46 (1989 and 1988 Supp. ).
Additionally, the legislative body's failure to provide guidelines and procedures for the renewal of permits lends support to the proposition that the PZC had no authority to impose the condition in question.
Nevertheless, "[t]he imposition of [a] void condition 
[by the commission] does not necessarily render the whole decision illegal and inefficacious. If there are sufficient CT Page 6767 grounds to support the remaining action of the commission . . ., a modification of the decision may be decreed." Beckish, supra, 18. Where the condition is "not an essential or integral part of the permissible, required action of the . . . commission," the void condition "can be severed from the action of the commission in granting the special permit." Id., 18-19. Since a school is a permitted use under the Code, and since the PZC has no discretion to deny a special use permit if the proposed use conforms to the requirements of the General Statutes and the Code; Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. 53, 56, 549 A.2d 1076 (1988); the two year restriction was not an essential or integral part of the commission's granting of the special permit and, therefore, the void condition can be severed. See Beckish, supra, 18-19.
Thus, having determined that the two year time limitation placed on the 1988 permit is an invalid condition, said condition is declared void. In light of that conclusion, the renewal application in this case was unnecessary to the applicants' continued legal use of the subject property as a school. The appeal, therefore, is moot and can be dismissed on that ground alone.
In any event, turning to the merits, plaintiff's appeal must be dismissed as the PZC did not act arbitrarily, illegally or in abuse of its discretion. As noted, this appeal involves a renewal application for a special use permit. In acting upon a special permit, the zoning agency is acting in an administrative capacity. Sheridan v. Planning Board, 159 Conn. 1, 16,266 A.2d 396 (1969).
 A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the `conditions necessary to protect the public health, safety, convenience and property values.' General Statutes [section] 8-2. Acting in this administrative capacity, the board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied.
Housatonic Terminal Corp. v. Planning and Zoning Board,168 Conn. 304, 307, 362 A.2d 1375 (1975) (Citation omitted). Where the regulations and statutes are satisfied, the zoning agency has no discretion to deny a special permit. Daughters of St. Paul, supra, 56. The zoning agency "is endowed with a liberal CT Page 6768 discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double I Limited Partnership v. Plan and Zoning Commission, 218 Conn. 65, 72, 588 A.2d 624 (1991). "On appeal, the court reviews the record before the agency and determines whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the [agency] is required to apply under the zoning regulations. Holt-Lock, Inc. v. Zoning Planning Commission of Milford, [supra. 3-7]; Spectrum of Connecticut, Inc. v. Planning Zoning Commissioner of Ellington, 13 Conn. App. 159, 163,535 A.2d 382 (1988)." Grace Community Church v. Planning Zoning Commission, 6 CTLR 153 (April 13, 1992 Fuller, J.). Where the agency gives no reasons for its action, the court is to search the record to find a basis for the agency's decision. Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369, 537 A.2d 1030
(1988). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised." Oakwood Development Corp. v. Zoning Board of Appeals, 20 Conn. App. 458,460, 567 A.2d 1260 (1990).
In the Town of West Hartford, a public school is a permitted use in a General Business zone. Governmental use is also permitted. The PZC determined in 1988 that the requirements of the Code pertaining to such uses had been met by the applicants.[5] The applicants now seek a renewal of the same special use permit. "Ordinarily, an administrative agency cannot reverse a prior decision [involving substantially the same request for relief] unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided." Grillo, supra, 367 (Citations omitted).
The burden of proof to demonstrate that the PZC acted improperly is upon the plaintiff. Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 588 A.2d 1372 (1991). Plaintiff has failed to demonstrate that there has been such a change warranting reversal of the PZC's original decision or that other considerations mandate such action.
Plaintiff's first argument is that the parking requirements as set forth in section 177-32 of the Code are not met. Section 177-32 sets out the required number of off-street parking spaces according to the use made of the property. The parking arrangements in the renewal application and site plan, however, are exactly the same as they were in 1988. Plaintiff's argument with respect to noncompliance should have been made in his CT Page 6769 appeal of the 1988 decision (see note 5), and, indeed, may have been decided in that appeal. Even if he could raise the issue at this time, the parking approved by the PZC does not violate the Code. Pursuant to section 177-32, the number of off-street parking spaces required for the subject property would be a total of 14.5 spaces (4.5 for the three-family dwelling unit located at 161-63 Park Road and 10 for the second-floor office space at 14 Oakwood Avenue (see footnote 1)). There is no off-street parking requirement for schools in section 177.32.
Plaintiff argues that CREC's use of the site represents a combination of uses, i.e., office, auditorium and personal service, and that pursuant to section 177-32I of the Code, the number of parking spaces required is the composite of the requirements of the various uses. There is no support, however, for interpreting the regulations in the manner suggested by plaintiff. Section 177-32I includes parking requirements for hospitals, places of worship, day-care centers and other uses which are concededly composites of various uses, yet the Code specifically lists house while it does not list schools. If the Town of West Hartford had wanted to include parking requirements for schools, it would have done so specifically. Since the parking spaces required for the subject property total 14.5 and the applicants' site plan provides for 16 spaces, there is no violation of the Code.
Plaintiff's second argument is that the PZC failed to consider evidence and testimony presented to it of changed circumstances and additional facts with respect to the parking which if considered would have warranted denial of the renewal application. As mandated by section 177-42[A](5) of the Code, the PZC is to make a positive finding that certain standards are met before issuing a special use permit. See footnote 3. Among the items to be considered are the location and size of the use, the nature and intensity of the operations connected with it, the size and location of the lot, the type of structure, the landscaping and the parking and loading. See Code, section 177-42[A](5)(a)-(c), set forth in footnote 3. The PZC made such a finding when it approved the initial application in 1988 and when it approved the renewal application at issue.
With respect to allegations of changed circumstances, the record reveals that, since the approval of the initial application, none of the items to be considered by the PZC pursuant to section 177-42[A](5) has changed in any way. The location of the school is the same; the maximum number of students permitted to utilize the facility is the same; the nature of the use is the same; the parking and loading requirements are the same, and so forth. Plaintiff argues that had the PZC considered certain facts concerning parking CT Page 6770 problems, it would have had to deny the permit. Plaintiff refers first to a letter dated May 21, 1990 from Steven Weitz, Town Civil Engineer, addressed to Mila Limson, Town Planner, which states:
 In our June 27, 1988 memo regarding this site, we had numerous objections to the parking and circulation patterns proposed. We would make the same comments today if this were a new site plan . . . .
The letter goes on to state:
 We have not specifically monitored this site since approval, but we have received a couple of parking complaints, which I did not save. By copy of this letter, we will request Police input as to any problems they are aware of, internal or external to the site . . . .
If the police department was aware of any problems with parking on or around the subject property, that information was not brought to the attention of the PZC at the hearing. Nor was any further information provided the PZC concerning the parking complaints referred to in Mr. Weitz's letter. Although the plaintiff testified at the hearing that tenants of the subject property were parking on plaintiff's property, there is no evidence in the record that the tenants referred to are students or staff members of CREC.
In contradiction to plaintiff's testimony, the applicants testified that all CREC students either were transported to the school by van or used public transportation; and that CREC had received no complaints during its tenance respecting traffic generated by CREC or behavior of the students. The applicants also submitted to the PZC a letter signed by nine neighboring residential and commercial property owners supporting use of the site by CREC.
The plaintiff also states that the PZC should have made inquiry into the underlying reasons for co-applicant Chase's noncompliance with the requirement that the parking lot be striped in accordance with the 1988 site plan. The record indicates that there was lengthy discussion (some fifteen pages of hearing transcript) about the noncompliance and the reasons therefor. Thus, plaintiff's argument that the PZC failed to make fair inquiry into the noncompliance has no merit. Further, the PZC made clear at the hearing that any preexisting violations of the site plan had to be rectified before the PZC would consider the renewal application. CT Page 6771
It is not for the court to weigh the evidence. Burnham v. Planning and Zoning Commission, 189 Conn. 261, 266, 455 A.2d 339
(1983). The court merely reviews the record to determine if in the light of the evidence presented, the commission acted illegally, arbitrarily or in abuse of its discretion. See Double I Limited Partnership, supra, 72. The decision of the PZC to grant the renewal notwithstanding the additional facts presented by the plaintiff concerning the parking arrangement was not illegal, arbitrary or an abuse of discretion, since it cannot be said that the PZC did not consider all the evidence before it, or that its decision lacks "an honest judgment reasonably exercised." Oakwood Development Corp., supra, 460.
Plaintiff's final argument is that the action of the PZC is unconstitutional in that it treated the applicants in a different and more privileged manner than other like situated applicants. This argument is based on allegations that the PZC allowed a concurrent parking arrangement at the subject property which is in violation of the Code. In support of his argument, the plaintiff points out language in the notes in the margin of the site plan which states that "Stanley H. Kaplan Educational Center of West Hartford, CT [a co-tenant] agrees to allow the Capitol Region Educational Center (CREC) to use seven (7) to eight (8) parking spaces, as required . . . during the weekdays between the hours of 7:00 a.m. and 4:30 p. m."
As discussed above, the Code requires that 14.5 spaces be provided on the subject property. See Code section 177-32[I](1). The Code does not require that the specified parking spaces be allocated to specific uses, as long as the total number of spaces available on the site meet the requirements for the site as a whole. Further, the agreement between the Kaplan School and CREC does not constitute PZC approval of the purported concurrent allotment of parking spaces. There is no support in the record whatsoever that the PZC permitted, or even considered, the concurrent parking arrangement between the two schools in its deliberations on the application. Since the site plan provides for more than the required number of parking spaces, plaintiff's constitutional argument has no merit.
In light of the fact that the uses proposed in the renewal application are permitted uses, and that the PZC made positive findings that the standards set forth in the Code were complied with, and in conjunction with the fact that the application at issue was a renewal application, the PZC had no alternative but to grant the application. See Daughters of St. Paul, supra, 56. The failure of the zoning authority to state its reasons upon the record is not fatal if the record supports the decision. A.P. W. Holding Corp., supra, 186. The record supports the CT Page 6772 decision of the PZC.
The plaintiff has failed to prove that the PZC's action is illegal, arbitrary or an abuse of discretion.
For the foregoing reasons, the plaintiff's appeal is dismissed.
SCHALLER, J.