[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs are the Estate of Genevieve K. Filipek and the co-executors of that estate. At the time this appeal was filed, CT Page 11116 November, 1992, the plaintiffs were the owners of property known as 21 Ardmore Road, New Britain.
Ralph and Audrey Gigliotti own the property known as 9 Ardmore Road, New Britain.
The plaintiffs' and the Gigliottis' property are in an S-2 Residence District. The primary use permitted in such a district is single family detached dwelling. Zoning Ordinances, City of New Britain, 70.
On August 14, 1992, the Gigliotti's submitted an application for a variance permitting the storage of up to 8 limousines on the 9 Ardmore Road property. These limousines were used in their commercial operation, Classic Limousines, which was conducted from another location.
On October 27, 1992, the defendant Zoning Board of Appeals held a public hearing on Gigliotti's application and granted the requested variance for a period of six months.
This appeal followed.
Aggrievement
Plaintiffs have alleged:
"14. The plaintiffs are aggrieved by said decision in that:
 A. They are the owners of a property interest in 21 Ardmore Road, New Britain, CT which property abuts the property which was the subject of the variance application by defendant Gigliotti.
 B. They are the owners of a property interest in 21 Ardmore Road, New Britain, CT which property abuts the property which was the subject of the variance application by defendant Gigliotti and the granting of the variance to permit defendant Gigliotti's operation of a limousine service out of his home at 9 Ardmore Road, New Britain, CT, interferes with plaintiff's use and occupancy of 21 Ardmore Road in that the residential character of the neighborhood is impinged upon by the constant traffic, noise and activity generated by the business." Amended Appeal From CT Page 11117 Decision of New Britain Zoning Board of Appeals, August 3, 1993, 14, p. 2.
Plaintiffs were the owners of a property Known as 21 Ardmore Road, New Britain, at the time the defendant board granted the variance. That property, 21 Ardmore Road abuts the Gigliotti property for which the variance was granted. Plaintiffs were aggrieved parties as of that time because they were "person[s] owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. C.G.S. 8-8(a)(1). By statute, they were deemed aggrieved by the defendant board's actions. C.G.S. 8-8(1). The defendant conceded so to the court.
But, the plaintiffs sold the property on April 14, 1993.
Under our law, "[t]he aggrieved status must continue throughout the period during which the appeal is heard. If the plaintiff sells the property which is adversely affected by the decision being appealed, the suit will be dismissed as to that party." [Footnote omitted] Tondro, Connecticut Land Use Regulation, 2d Ed., 8.B.2, p. 537.
Plaintiffs did sell the property on April 14, 1993. However, on that same day, and before the sale, they entered into an Indenture by which plaintiffs claim "they are owners of a property interest in 21 Ardmore Road . . . ." See Amended Appeal From Decision of New Britain Zoning Board of Appeals, August 3, 1993, 14 B, p. 2.
The Indenture provides:
 "WITNESSETH that the LESSORS for and in consideration of the rents and covenants herein reserved and contained, and in consideration of the mutual promises of the parties each to the other, kept and fulfilled on the part of the FIDUCIARIES, and by these presents do grant, demise and let unto the FIDUCIARIES, the portion of certain real property at 21 Ardmore Road in the Town of New Britain, County of Hartford and State of Connecticut known as the upper level of the garage located thereon; with the appurtenances, to have and to hold the same for a term of One (1) Year and, at the expiration of said term, either as stated or as extended by mutual agreement of CT Page 11118 the parties herein, the FIDUCIARIES shall quit and surrender the Premises hereby demised in as good a state and condition as reasonable use and wear thereof will permit, damage by the elements excepted. Fiduciaries further agree that their use of the demised premises shall in no way interfere with the quiet enjoyment of the remaining portion of the premises known as 21 Ardmore Road by LESSORS." Indenture dated April 14, 1993. Exhibit A.
At the court trial, it developed that plaintiffs lease the upper portion of the garage, i.e. a loft, at 21 Ardmore Road. Transcript of Proceedings, 8/19/93, p. 11-12. Plaintiffs use the space to store 2 chairs, a bureau, and some lumber, i.e. approximately 50 boards. Transcript of Proceedings, 8/19/93, p. 14. The amount paid for the lease is totally obscure. The Indenture does not state it. Exhibit A. The plaintiff Matulis testified that it was taken into consideration in the sale price of the property but did not quantify how it was factored into that price. Transcript of Proceedings, 8/19/93, p. 12-13.
The plaintiff Matulis also testified quite candidly that one reason for the Indenture arrangement was to continue an interest in the property so that they could continue to pursue this appeal. Transcript of Proceedings, 8/19/93, p. 9-10.
Section 8-8(a)(1) of the General Statutes provides:
 (1) "Aggrieved person" means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, "aggrieved person" includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. C.G.S. 8-8(a)(1).
Ownership for the purposes of 8-8(a)(1)'s "person owning land" may be less than fee simple absolute title. "[A] tenant for life of land abutting or within a radius of one hundred feet of land thus involved is a `person owning land' within the purview of 8-8. Smith v. Planning Zoning Board, 203 Conn. 317, CT Page 11119 318-319 (1987). The Supreme Court stated the reason(s) for that conclusion:
 "Section 8-8 purports to grant an automatic right of appeal to "any person owning land" who meets certain other qualifications. The question is whether the quoted language can be construed to include a life tenant. The plaintiff satisfies all requirements for an automatic right of appeal, if she may be regarded as a "person owning land." The problem is apparently one of initial impression. For that reason we must interpret the statute in its context and according to the circumstances in which the term a "person owning land" is used.
 "The plaintiff's freehold estate is an estate for her own life. Her reserved life interest remains subject to her direction and control as long as she is alive. In every beneficial sense, she is the owner of the premises situated on Caswell Street. By the common law, a tenant for life, where he is under no restriction in the deed by which he holds, could use the land in the same manner as the holder in fee. Every life tenant had the right to the undisturbed possession of the land and to the income and profits derived from such land. C. Moynihan, Introduction to the Law of Real Property (1962 Ed.) c. 2, 12. In addition, the alienable quality of a life estate allowed a life tenant to convey his whole estate to a third person. Id. A life tenant, as a holder of a freehold estate, was considered "seised" of the land. Id., c. 4, 1. The concept of seisin has diminished somewhat in importance today. Under the common law, however, it was extremely significant. It connoted something beyond possession. It meant ownership "in so far as the common law admits of ownership", and in many practical respects, the interest of the life tenant was treated as essentially equivalent to outright ownership. Id., c. 4, 2.
 "We recognize that the plaintiff holds her property in a form which separates the right of possession of a life tenant from the rights of the remainderman in the fee. This, however, does not necessarily mean that a life tenant may not receive the benefits of 8-8. The incidents of the plaintiff's ownership of the land as a CT Page 11120 tenant during her life lead us to conclude that she has a sufficient ownership of the locus to entitle her to recognition as a "person owning land" with the right to appeal under 8-8." Smith v. Planning Zoning Board, 203 Conn. @ 322-323.
Primerica v. Planning and Zoning Commission, 211 Conn. 85
(1989), provides the answer to the question of whether a lessee may be considered an owner for the purposes of C.G.S. 8-8(a)(1). That case involved both the grant and denial of requests for amendment of the zoning regulations. The plaintiff, Primerica, had applied for the zoning amendments. At the time the board took the action appealed from, it owned the property which would be primarily effected by these amendments.
 "[W]hile these appeals were pending in the trial court, the plaintiff sold the subject property and buildings to Greenwich-American Limited Partnership, an unrelated entity, but retained four interests in the property. First, the plaintiff has become the lessee of 320,000 square feet in the complex, which is 55 percent of the total square footage. This lease runs for ten years with extension rights for another fifteen years. The plaintiff also leases the entire guest house. Second, the plaintiff is a rent guarantor for the remaining 45 percent of the complex. The rent guarantee runs for a period of five years. Third, the plaintiff has a right of first refusal for the property in the event that the new owner sells, conveys, or transfers all or any portion of its interest. Finally, the plaintiff holds a purchase money mortgage upon the property in the amount of $15.1 million. Id. @ 93-94.
The Supreme Court had preceded the material just quoted with the statement:
 "This court has not set forth a precise standard that defines the required interest a [nonowner]** must possess in order to become an aggrieved party under 8-8 and 8-9. Rather, we have held that the extent to which a party with an interest in the property [other than that of an owner]** is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and CT Page 11121 legitimate interest can appeal an order. See, e.g., Bell v. Planning Zoning Commission, 174 Conn. 493, 498, 391 A.2d 154 (1978); Nader v. Altermatt, 166 Conn. 43, 53, 347 A.2d 89 (1974); Hughes v. Planning Zoning Commission, supra." Id @ 93.
All of this, and particularly the Supreme Court's reference to Primerica as a "nonowner" and as one having an interest "other than that of an owner" must mean that Primerica was not a "person owning land within the purview of C.G.S. 8-8(a)(1). Primerica was far more than a lessee; its level of interest was far more than that of a simple lessee. It is clear the Supreme Court did not consider its leasehold interest sufficient to make it an owner for the purposes of 8-8(a)(1).
The plaintiffs' leasehold interest in the garage loft of 21 Ardmore Road is not sufficient to afford the status of a "person owning land" in this appeal.
The plaintiffs are not "statutorily" aggrieved under C.G.S.8-8(a)(1).
In the alternative, plaintiffs claim they meet the requirements for "classical aggrievement." See Post Hearing Memorandum, dated August 19, 1993, p. 2. In their brief, plaintiffs recite how they are aggrieved.
 "In the present case, the plaintiffs are not tenants at will. Furthermore, the value of their lease is lessened by the variance. Finally, the continuing presence of the limousines poses a specific threat to the plaintiffs in that it impairs the ability of the fire department to respond should a fire break out in the leased premises. Indeed, many neighbors testified that the limousines block traffic and create difficulty in negotiating curves. See Record, Return No. 23, Transcript pp. 97, 142-43 and 144." See Post Hearing Memorandum, dated August 19, 1993, p. 2.
However, the plaintiffs introduced no evidence which could form the basis for a court finding of aggrievement as claimed in plaintiffs' brief. The only testimony produced before the court CT Page 11122 was that of the plaintiff Matulis. Transcript of Proceedings, 8/19/93, p. 6-14. Her testimony did not address aggrievement. She did not testify "that the value of their lease is lessened by the variance." Nor did she testify that the limousines presence was an impediment to the response time of the fire department. The comments of the neighbors made at the defendant board's hearing cannot establish aggrievement; aggrievement must be established by in court evidence.
The plaintiffs have not sustained their burden of proof on the issue of their aggrievement.
Having found that the plaintiffs have not established their aggrievement, perhaps the court should dismiss the appeal and not consider the substantive issues raised by the appeal. However, the court is aware that its finding of a lack of aggrievement may be a close question. The costs to the litigants, timewise and dollarwise, are such that the court will make its findings and conclusions on those issues so that in the event the court's aggrievement decision is held erroneous, the parties will not have to relitigate those issues on the trial court level. This seams prudent since the court has fully heard these matters. Furthermore, the court, in the interest of judicial economy should decide the issues now if it may eliminate the need for judicial consideration of these issues in the future.
With these considerations in mind, the court will discuss and render it findings and conclusions on these issues.
Hardship and Variance
The Gigliottis' application for a variance claimed a hardship: "The applicant has been unable to find an adequate facility to house vehicles. No adverse effect on neighborhood." A variance of 70-10 and 240-50-30 of the zoning regulations was requested. Application, 4. ROR #1.
These sections provide:
"70-10 Permitted Uses
 "Within any S-2 Residential District, a building, structure, or lot shall only be used for one of the following permitted uses . . .
CT Page 11123
"70-10-10 SINGLE FAMILY DETACHED DWELLING."
 "240-50-30 Not more than one commercial vehicle shall be housed or parked in a private garage or offstreet parking area. Such commercial vehicle shall not exceed a gross motor vehicle weight of 10,000 pounds.
Zoning Ordinances, City of New Britain, pp. 17 and 59. ROR #26.
A public hearing was held on October 27, 1992. It developed that the applicant had been using the property to park limousines for 7 years. The vehicles also were washed and cleaned there. Because the limousines were longer than the ordinary automobile, Gigliotti said it was difficult to find garage space of sufficient dimension for the limousines. Transcript of ZBA Proceedings, 10/27/92, pp. 21, 37 44-5. ROR # ___.
There was no evidence that the applicants' property was unusual in any way. There was no evidence even suggesting that the property suffered from or was effected by the regulations in a way different from ocher properties in the district. The record does show the property was an ordinary, almost rectangular lot, having dimensions of roughly 80 feet by 170 feet, at the corner of two residential streets. See Map attached to and a part of Application. ROR #1. There was no evidence that the property's location, topography, shape, etc., caused any problem or "hardship."
The board with no, or almost no, discussion voted 5-1 to grant the variance for a period of six months. Transcript of ZBA Proceedings, 10/27/92, p. 156-159. ROR #23.
A "Notice of the Board's action was issued and filed with the Town Clerk. It reads:
 "Mr. Balciunas made a motion to grant a variance to Sec. 70-10 and Sec. 240-50-30 to permit the operation of a limousine service out of 9 Ardmore Road for a period of 6 months.
"Ms. Gallo seconded the motion.
 "After a public hearing and listening to the evidence presented, the Board finds the granting of this variance will not involve substantial detriment to the CT Page 11124 public good nor substantially impair the purpose and intent of the ordinance.
 "VARIANCE WAS GRANTED FOR 6 MONTHS ONLY BY A 5 TO 1 VOTE.
"Mr. Follacchio voted against.
 "ZONING BOARD OF APPEALS Sally Anderson, Chairperson
 "Thomas F. Del Conte Secretary" ROR #s 19 and 20
The transcript of the board activities on plaintiffs' application does not show the board even discussed, and therefore did not find, "the granting of this variance will not involve substantial detriment to the public good nor substantially impair the purpose and intent of the ordinance." Transcript of ZBA Proceedings, 10/27/92, pp. 156-159. ROR #23.
C.G.S. 8-7 provides in part:
 "Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application or to which an exception is granted and, when a variance is granted, describe specifically the exceptional difficulty or unusual hardship on which its decision is based." C.G.S. 8-7.
The board did not "state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application. Nor did it "describe specifically the exceptional difficulty or unusual hardship on which its decision is based." C.G.S. 8-7.
Obviously, the operation of a limousine service is not a use permitted in an R-2 Residence District. The Gigliottis' application for a variance itself is an acknowledgment that the CT Page 11125 use requested was not permitted. "A request for a variance therefore asserts that the ordinance in question prohibits the proposed use and seeks relief from the requirements of the ordinance." Wnuk v. Zoning Board of Appeals, 225 Conn. 691 (June 8, 1993).
As indicated above, the defendant board did not state the reasons for its action or define the hardship. It was required by statute to do so. However, when the board does not, the court is required to review the record and determine whether grounds for the board's action is contained in the record. The court has examined the record. Nothing exists in that record which would warrant a variance. The record does not reveal anything which even colorably could be deemed a hardship. The board did not state anything about the hardship. It couldn't.
The powers of a zoning board of appeals are created and defined by statute. With respect to variances, the statute provides:
 "8-6. Powers and duties of board of appeals. The zoning board of appeals shall have the following powers and duties: (1) . . . (2) . . . and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . . ." C.G.S. 8-6.
The City Charter also defines the board's authority regarding variances.
"3173. Powers of Board
 "The zoning board of appeals shall have the following powers:
(1) . . . CT Page 11126
(2) . . .
 (3) To authorize upon appeal in specific cases such variance from the terms of such ordinance as will not be contrary to the public interest, where owing to special conditions, a literal enforcement of the provisions of such ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." Charter, City of New Britain, 3173, p. 508. ROR #27.
The regulations also state when a variance may be granted.
 "270-50-30.10 Every variance granted by the Board shall be based upon and accompanied by a specific finding or findings, supported by evidence produced at a public hearing in the manner provided by law, to the effect that the special conditions of the particular case are such as to constitute unnecessary hardship in the way of literal enforcement of the provisions of this Ordinance.
 "270-50-30.20 Such hardship shall not be self-imposed by the appellant.
 "270-50-30.30 Such unnecessary hardship shall be unique, in the sense of not being shared by all properties in the vicinity.
 "270-50-30.40 Every variance granted by the Board shall be designed by the Board to safeguard the health, safety, morals, or the general welfare of the community, or the comfort, happiness and prosperity of the inhabitants thereof, and shall be further designed provide reasonable consideration among other things the character of the neighborhood or District, the conservation of property values, and the direction of building development in accordance with the comprehensive plan; and shall not involve substantial detriment to the public good nor substantially impair the intent and purpose of the zone plan and of this Ordinance." Zoning Ordinances, City of New Britain, p. 76. ROR #26.
CT Page 11127
It is these authorities which guide the court in its review of this appeal.
Plaintiffs stated their justification for the variance in their application to the defendant board:
 "The applicant has been unable to find an adequate facility to house vehicles. No adverse effect on neighborhood." A variance of 70-10 and 240-50-30 of the zoning regulations was requested. Application, 4. ROR #1.
The court asked the board's counsel if the board would concede that the reason stated in plaintiffs' application "as a matter of law that would not constitute a hardship for variance purposes?" Forthrightly, counsel responded: "That alone would not constitute a hardship." The court then asked the board's counsel: "Now could you tell me where in the record there is evidence of a hardship, a legitimate hardship which would warrant a variance?" Transcript of Court Proceedings, 8/19/93, p. 29.
In response, the board submitted a "Supplemental Trial Memorandum," dated August 23, 1993. In it the defendant board claims that its —
 "minutes include testimony which is sufficient to find an exceptional, difficult or unusual hardship for which granting a temporary variance would be appropriate. Courts in the State of Connecticut have recognized that in a case of extreme financial hardship there may be a basis for granting a variance. See Stankiewicz v. Montville, 15 Conn. App. 729, affirmed per curiam 211 Conn. 76 (1989). Testimony from Ralph Gigliotti states that the limousine service was at this same location for a period of seven years (Return #23 — Transcript, p. 21). Mr. Gigliotti further goes on to testify that if the temporary variance was not granted "this would put us out of business" (Return #23 — Transcript, p. 44). This clearly demonstrates a condition of extreme financial hardship. Additional testimony by Mr. Gigliotti denotes the difficulty in finding a place to store a limousine because of its unusual length and size (Return #23 — Transcript, p. 45). Further testimony by Mr. Gigliotti substantiates the difficulty of finding a storage area for these vehicles because CT Page 11128 they had tried in the past to find a garage without success (Return #23 — Transcript, p. 124).
 "The testimony from Pat Gigliotti also reflects the inability of the applicants to find a new storage facility for the limousines (Return #23 — Transcript, p. 129). Therefore, if the Board was to deny the request for a temporary variance, it would have immediately created a condition of extreme financial hardship and possibly cause the applicants to cease the limousine operation entirely because they had not been successful in obtaining a new storage facility for their limousines. Supplemental Trial Memorandum, August 23, 1993, pp. 1-2.
It is very clear that financial difficulties such as those claimed by the plaintiff and the defendant board do not constitute a "hardship" for variance purposes.
The board cites Stankiewicz v. Montville, 15 Conn. App. 729, affirmed per curiam, 211 Conn. 76 (1989). That case differs markedly from the present case. There, the court found that application of the zoning regulations to Stankiewicz' properties caused a confiscation. There is nothing in this case which even hints that the zoning regulations have diminished the value of plaintiffs' residential property.
The defendants Gigliotti did not address the "hardship" issue in their brief. See Brief of Defendant Ralph Gigliotti, April 26, 1993. [113] However, in colloquy with the court, counsel for Gigliotti set forth the grounds for a hardship. ". . . But the hardship, I'll tell you what the hardship is here and what the board felt. He was there for eight years without any problems in a — it was an existing situation. And the board obviously felt they gave him some turn around time to recognize the reality of the situation." Transcript of Court Proceedings, 8/19/93, p. 37-38.
The law is well established that financial difficulty alone cannot be the basis for a hardship.
 "Financial loss is repeatedly dismissed as a basis for a claim of hardship; the financial loss or gain of the applicant in his particular use of the property is relevant only where no use of the property remains." CT Page 11129 [Footnote omitted] Tondro, Connecticut Land Use and Regulation, 2d. Edition, p. 128.
 "Absent a situation amounting to confiscation, financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance, and does not constitute hardship." [Footnote omitted] Fuller, Land Use and Practice, 9.3, p. 152.
There is no claim or evidence which suggests confiscation.
 "`Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance.' Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239-40, 303 A.2d 743 (1972), quoted in Pollard v. Zoning Board of Appeals, supra, 44. Nor is economic hardship a sufficient justification for granting a variance. Cowles v. Zoning Board of Appeals, 153 Conn. 116, 118, 214 A.2d 361 (1965)." Spencer v. Zoning Board of Appeals, 15 Conn. App. 387, 391-2
(1988).
The power and authority of a zoning board of appeals to grant a variance is strictly limited. It is not the board's role to play "the good guy" and grant a variance to alleviate a claimed economic problem arising from circumstances wholly unrelated to the zoning regulations. But that is what the board did here. Its actions in granting the variance were illegal, arbitrary, and an abuse of its discretion.
The supposed variance is null and void.
The defendants Gigliotti claim they really didn't need a variance. [Why they make this claim in this appeal from the grant of a variance to them is not clear.] They base this contention on a claim that the limousines are not "commercial vehicles" because they each weigh only 6,100 pounds, carry at most only six passengers and a driver, and do not carry any hazardous materials. See Brief of Defendant Ralph Gigliotti, April 26, 1993, 6-8. [113] The Gigliottis do not contest the zoning regulations' prohibition against having no more than one commercial vehicle on an R-2 property. The Gigliottis claim the term, "commercial vehicle" is not defined in the zoning regulations. The claim that the definition of "commercial motor CT Page 11130 vehicle" in Title 14 of the General Statutes must be used in interpreting the New Britain zoning regulations. The cite City of New Britain v. Yuille, Superior Court, J.D. Hartford/New Britain at New Britain, CVN-9110-1103-NB-T (1992). That case does not help the Gigliottis. There Judge Berger did look to C.G.S. 14-1(11) for guidance on the meaning of "commercial vehicle" in the zoning regulation. He determined that the converted bus was a camper, a recreational vehicle. Judge Berger's holding that Yuille's bus was not a commercial vehicle was not predicated on its weight. Yuille does not hold that vehicles having a gross weight of than 6,100 pounds are not commercial vehicles.
Furthermore, the regulations provide:
 30-10-60 Where a word or term is not defined in this Section, it shall have the accepted meaning, or such meaning as the context may apply. Zoning Ordinances, City of New Britain, p. 6. ROR #26.
And, the common law of construction of statutory language is:
 "In construction of the words of a regulation, like those of a statute, common sense must be used. Police Department v. State Board of Labor Relations, 225 Conn. 297, 303, 622 A.2d 1005 (1993)." Smith v. Zoning Board of Appeals, 227 Conn. 71, 92 (August 10, 1993).
The Gigliottis' position that the limousines are not "commercial vehicles is untenable.
Mootness
The Gigliotti claim this appeal is moot and should be dismissed. This claim is based on the fact that the supposed variance was for a period of six months. The six month period began on October 27, 1992 or when notice thereof was published. C.G.S. 8-7. In either case, the six month period has long since expired.
The vigor with which the Gigliottis defended this appeal belies their claim of mootness. CT Page 11131
The temporary variance is of doubtful lineage. If the grant of this temporary variance is allowed to stand, it is at least an implicit finding that a hardship existed. A zoning board of appeals cannot change its prior decision regarding a particular property unless there is a significant change of circumstances. If the Gigliottis were to apply for another variance, they could plausibly claim the variance granted on October 27, 1992 was based on a hardship which still existed because there was no change in the property. They might be entitled to a variance since the hardship, although improperly granted, has gained stature because it was allowed to stand. See Pisano v. Harding, 7 CLT No. 8, p. 11 (1980) and cases cited.
The court concludes that the case should not be dismissed for mootness.
Conclusion
Plaintiffs have not sustained their burden of proof establishing they were aggrieved. The appeal is dismissed.
Parker, J.