ROBERT J. STANKIEWICZ ET AL. *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF MONTVILLE ET AL.
(6174)

DUPONT, C. J., STOUGHTON and FOTI, Js.

Argued May 16—decision released August 30, 1988

*Stanley Maxim Lucas,* for the appellants (plaintiffs).

*James J. Devine,* for the appellee (named defendant).

*Harry B. Heller,* for the appellees (defendant Joseph
Fisher et al.).

FOTI, J. The plaintiffs[1] appeal from the judgment of the Superior Court dismissing their appeal from a decision of the board of zoning appeals of the town of Montville which granted six variances from the bulk area requirements and a variance permitting the use of an undersized lot for an accessory building. We find no error.

The facts relevant to this appeal are not in dispute. On March 19, 1981, Joseph and Marjorie Fisher purchased the lot that is the subject of this appeal. The lot, which is 97 feet by 87 feet (8439 square feet), is located on the northwest side of Lake Drive in Montville, directly opposite another parcel owned by the Fishers which is improved by a single-family dwelling. On October 15, 1970, the town enacted zoning regulations. On that date the Fishers' predecessor in interest owned the lot in its present configuration. In 1985, the Fishers applied for variances from the bulk area regulation and the setback requirements[2] so that they could build a garage on the subject lot. After a hearing, the board granted the following variances: (1) 111,561 square feet from the 120,000 square feet bulk area requirement; (2) 35 feet from the front yard setback requirement; (3) 21 feet from the rear yard setback requirement; (4) 14 feet from the side yard requirement; (5) 9 feet from the side yard total width requirement; (6) 112 feet from the road frontage requirement; and

---

[1] The plaintiffs, Robert and Cheryl Stankiewicz, own property abutting the subject lot. They have brought this action pursuant to General Statutes § 8-8.

[2] The subject lot is located in an RA-120 district. Section 3.12 of the town's zoning regulations limits the use of such a lot to either single-family detached home or limited agricultural uses. The regulations also established the following requirements for such a lot if it is used for a single-family detached home: (1) 120,000 square feet bulk area; (2) a lot width of 200 feet; (2) a front yard setback of 50 feet; (4) a side yard setback of 25 feet; and (5) a rear yard setback of 50 feet.

(7) a variance permitting the construction of a garage on a preexisting small lot with no principal dwelling on it.

These seven variances were granted with the condition that the three-car garage proposed for the lot be limited in size to 22 feet by 36 feet. The board granted the variances after concluding that the "conditions and circumstances associated with the request are not the result of actions of the applicant taken subsequent to the adoption of the zoning regulations," and that the "conditions on the site are unique to the applicant's land." The plaintiffs appealed that decision of the board to the Superior Court. After reviewing the record, the court rejected the board's conclusion that the hardship was unique as there were numerous undersize lots affected by the 1970 regulations. The court found, however, that the variances were properly granted because the regulations, as applied to the Fishers' parcel, were confiscatory and that the variances would not substantially affect the comprehensive plan. This appeal followed the court's judgment dismissing the plaintiffs' appeal.

On appeal, the plaintiffs claim that the court erred (1) in upholding the decision of the board after concluding that there was insufficient evidence to support the board's finding that the hardship was unique, (2) in substituting its own conclusion for those reached by the board, (3) in upholding the board's variances permitting the use of the lot for an accessory building, and (4) in finding that the zoning regulation had a confiscatory effect when applied to the parcel.

We first consider the plaintiffs' claim that the court erred in substituting its own findings for those of the board. It is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long

as honest judgment has been reasonably and fairly made after a full hearing; *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* 13 Conn. App. 159, 163, 535 A.2d 382 (1988); as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. *Feinson* v. *Conservation Commission,* 180 Conn. 421, 425, 429 A.2d 910 (1980).

The plaintiffs argue that because the court found no basis in the record for the board's conclusion that the hardship was unique, it was then obligated to sustain the appeal without further review of the record. We do not agree. Although it is desirable for a zoning authority to state the grounds for granting a variance and the failure to do so renders the court's review more cumbersome, it does not preclude the court from upholding the board's decision. If the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken. *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 661–62, 425 A.2d 100 (1979); *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 186–87, 355 A.2d 91 (1974); *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 156, 292 A.2d 893 (1972); but see *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 50, 484 A.2d 483 (1984) (court erred in concluding that there was insufficient evidence for the reasons given by the board for denying a special permit and, in effect, substituted its judgment for that of the zoning board).

A zoning board is comprised of laymen whose responsibility is to protect the interest of the individual property owner by granting a variance when the zoning regulations impose a hardship on the property owner of the nature described by the General Statutes. *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703,

715, 535 A.2d 799 (1988). In searching the record, the trial court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community in concluding that the board's decision should be upheld. *Parks* v. *Planning & Zoning Commission,* supra, 662. Here, the court did not substitute its findings for those of the board, but reviewed the record that was before the board. In reviewing that record, the court did not err in concluding that board's decision should be upheld.

We next consider the plaintiffs' claim that there was insufficient evidence to support the court's conclusion that application of the zoning regulations to the subject lot was confiscatory.

We note at the outset that the plaintiffs do not challenge the court's conclusion that the hardship resulting from the application of the zoning regulations to the lot was not self inflicted. See *Spencer* v. *Board of Zoning Appeals,* 15 Conn. App. 387, 544 A.2d 676 (1988). The court correctly concluded that because the property existed in its present configuration prior to the enactment of the zoning regulations, the present hardship, resulting from the nonconformity of the lot, is not attributable to the present owners or their predecessors in title. The sole question raised by this claim, therefore, is whether there was sufficient evidence in the record to support the court's conclusion that the zoning regulations, as applied, were confiscatory.

A confiscatory effect results when a "zoning regulation practically destroys or greatly decreases the value of a specific piece of property." *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* 143 Conn. 257, 262, 121 A.2d 637 (1956); see also *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151–54, 365 A.2d 387 (1976). When such an effect

results, a variance may be granted provided that the variance does not materially impair the effectiveness of the zoning regulations as a whole and that the action promotes substantial justice. *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* supra, 262; *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 601, 108 A.2d 899 (1954).

In *Culinary Institute of America, Inc.,* the court upheld the granting of a variance which permitted the use of a parcel with a single-family dwelling on it for the erection of a fifty-four unit apartment building. The court concluded that the variance was properly granted because the changing character of the area had rendered the property valueless as it existed, and that the continued enforcement of the zoning regulations as to that property was, in effect, confiscatory.

The court reached a similar conclusion in *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra. In *Chevron,* the applicant sought a variance from the zoning district's setback regulation in order to use the site for a gasoline service station because the site was unsuitable for residential use. In concluding that the variance should be granted, the court noted that the application of the setback regulation would appropriate 85 percent of the parcel for public welfare without compensation. It refused to upset the conclusion of the trial court that such an application was confiscatory. Id., 152.

In this case, the court's review of the record disclosed that the application of the bulk area requirements and the setback regulations to the subject property would prohibit the owner's use of the lot for either a principal structure or an accessory building. The court noted that applying the setback and side yard requirements to the lot would result in those limits overlapping. The court

further noted that even if § 5.21[3] of the zoning regulations, which reduces the requirements for preexisting undersized lots, was applied to the subject parcel it is too small to meet the state health code regulation for installation of an onsite sanitary facility.

On the basis of these facts, culled from the record, the court concluded that the zoning regulations had a confiscatory effect as the application of these regulations prohibited any reasonable permitted use of the subject lot. We find no error in the court's conclusion drawn from facts clearly present in the record.

The plaintiffs next claim that the court erred in upholding the board's decision to grant a variance permitting the principal use of the lot for an acccessory

---

[3] Section 5.21 of the town's regulations makes the following provision for preexisting undersized lots:

"Small Lots for Single-Family Detached Residences. A lot either owned individually and separately and separated from any adjoining tract of land on the effective date of these Regulations or located in and part of a subdivision plan which has been given final approval by the Zoning and Planning Commission prior to such date, which has a total area or lot frontage less than the minimum required in the Bulk Table, may be used for a single-family detached residence, provided such lot shall conform to the Use Regulations and all other Bulk Regulations applicable to a particular lot size as stated in Section 3.12 or the Table below:

| FRONTAGE | MINIMUM SIDE YARD WIDTH |
|---|---|
| Less than 55 feet | 5 feet, but the sum of both yards not less than 35% of lot width |
| 55 feet and over, but less than 65 feet | 8 feet, but the sum of both yards not less than 33.5% of lot width |
| 65 feet and over, but less than 75 feet | 10 feet, but the sum of both yards not less than 33.5% of lot width. |

Lots subject to the provisions of Section 5.21 which have an in between dimension as their lot frontage, shall comply with the appropriate standard prescribed for the nearest applicable listed standard in Section 3.12. Lots subject to the provisions of Section 5.21 shall not be built upon unless the Health Officer shall certify in writing to the Zoning Agency as to the adequacy and safety of the sewer disposal system and water supply."

building. In support of this argument, the plaintiffs rely on *Adley* v. *Paier,* 148 Conn. 84, 167 A.2d 449 (1961). We find the facts and the reasoning of *Adley* distinguishable.

In *Adley,* the owners of an art school purchased the lot adjoining the parcel where the school was located and immediately began using the lot as a parking area for the school. An abutting landowner obtained an injunction which prohibited the use of the subject lot for parking. On appeal, the owners of the lot argued that using the lot for parking was a permissible accessory use within the zoning regulations. The court rejected this argument determining that if such parking was a permissible accessory use under the regulation, it could only be such if it was conducted on the *same lot* as the principal use. The court concluded that parking on the adjacent but originally separate lot was not a permissible accessory use under the regulations. Here, the plaintiffs argue that § 1.2[4] of the Montville zoning regulations, like the regulation in *Adley,* require accessory buildings be located on the same lot as the principal structure. Even if we were to agree that the relevant language of the regulation in *Adley* is identical to that of § 1.2 of the Montville zoning regulations, the facts of this case are inapposite. In this case, the Fishers' petition for the seven variances implicitly acknowledged that the use of the subject lot for a garage was not permissible under the town's zoning regulations. They did not, as in *Adley,* begin using the parcel as a parking area and then claim that they could use the lot as a matter of right under the zoning regu-

[4] Section 1.2 of the town's zoning regulations defines accessory as follows: "*Accessory.* The term applied to a building or use which is clearly incidental or subordinate to, and customary in connection with, the principal building or use and located on the same lot with such principal building or use. Any accessory building attached to a principal building is deemed to be part of such principal building in applying the Bulk Regulations to such building."

lations. To the contrary, the Fishers obtained the necessary variances so that they could use the lot for an accessory building which, otherwise, would have been a violation of the town's regulations.

Finally, we consider the plaintiffs' claim that the court erred in concluding that there was sufficient evidence for the board's conclusion that the variance would not substantially impair the comprehensive zoning plan.

The zoning authority must derive the comprehensive plan from the scheme of the zoning regulations themselves. *Adolphson* v. *Zoning Board of Appeals,* supra, 713. " 'We have said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 540–41, 338 A.2d 490 (1973).' *Burnham* v. *Planning & Zoning Commission,* [189 Conn. 261, 266, 455 A.2d 339 (1983)]." *Central Bank for Savings* v. *Planning & Zoning Commission,* 13 Conn. App. 448, 459, 537 A.2d 510 (1988).

It is undisputed that General Statutes § 8-6 vests the board with the authority to grant a variance. The question thus becomes whether the decision of the board to grant the seven variances substantially impaired the comprehensive plan. The plaintiffs argue that because § 5.21 of the town's regulation reduces the bulk area requirements for preexisting undersized lots, the variances were contrary to the comprehensive plan. We do not agree.

Section 5.21 of the regulations permit the building of a principal dwelling on an undersized lot provided the lot meets bulk area requirements which are less

stringent than those imposed by the regulations enacted in 1970. Section 1.2 of the regulations provides that accessory buildings be incidental to a principal structure and that these structures be located on the same lot. Even with the reduced requirements listed in § 5.21, the subject lot remains too small for use as a building lot for a single-family detached residence. Nor is the lot capable of being integrated with the lot where the Fishers' residence is located so that it may conform to § 1.2 of the town's regulations for an accessory use. Thus, in order for the lot to have some permitted use a variance was needed.

In reviewing the record, the court concluded that the proposed garage would "relieve parking congestion" without placing any "added burdens" on the sanitation requirements in the area. We cannot say that these factors were insufficient to support the court's conclusion that the variances would not impair the harmony of the comprehensive plan.

There is no error.

In this opinion the other judges concurred.