[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Samuel Bell, Joseph Manzi, Gerard Griffin and Edward, J. Capasse individually, and as trustee, acting together under the name Taylor Road Associates (hereinafter referred to as "Taylor Road Associates") are the owners of a 41 acre parcel of land located on the east side of Taylor Road in the Town of New Milford.
In December 22, 1989 Taylor Road Associates filed an application with the Inland Wetlands Agency of the Town of New Milford seeking a permit to conduct a regulated activity on said 41 acres.
In its application Taylor Road Associates stated that "the proposed activity is a 16 lot subdivision, which will include approximately 1,700 lineal feet of new road that will end in an 80' diameter turn-around. The development plans for this project propose two brook crossings, CT Page 2583 which include approximately 5,750 square feet of wetlands and/or water course area to be filled in with clean, gravelly fill around two respective road culverts. In addition to the road work, 15 new homes are proposed on the site. The anticipated time of construction for the road and all associated storm drainage and utility installations would be approximately 12 months." (Record Item #1).
On February 22, 1990 the Agency held a public hearing on the application of Taylor Road Associates. Notice of the public hearing was published in The New Milford Times on February 8, 1990 and February 15, 1990. (Record item #2).
The hearing conducted by the Agency on the application was held on the nights of February 22, 1990, March 1, 1990, March 29, 1990. (Supplemental Return of Record items #60, #61, #62, #63, #64 and #65). At its meeting of June 7, 1990, the Agency denied the application of Taylor Road Associates. (Record item #4). Notice of the decision of the Agency was published in The New Milford Times on June 14, 1990. (Record item #3).
The plaintiffs have appealed the decision claiming that the Agency acted illegally, arbitrarily and in abuse of its discretion in denying the inland wetlands permit.
Section 22a-43(a) of the General Statutes provides in part as follows:
 The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36
to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may appeal to the superior court in accordance with the provisions of section 4-183, . . .
General Statutes Sec. 22a-43(a).
As owners of the property and the applicants, the plaintiffs are aggrieved and therefore have standing to bring this appeal. Bossert Corporation v. Norwalk, 157 Conn. 279; DiBonaventura v. Zoning Board of Appeals 27 Conn. App. 367, 374.
Section 22a-42a(d) of the General Statutes provides in pertinent part:
 In granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in section 22a-41, and such agency shall state upon the record the reason for its decision.
CT Page 2584
General Statutes Sec. 22a-42a(d).
In its review of this particular section of the General Statutes the court in the case of Gagnon v. Inland Wetlands and Water Courses Commission, 213 Conn. 604 (1990) stated the following at pages 607-609 of its decision:
 Notwithstanding this statutory language, our case law clearly requires the trial court, in appeals from planning and zoning authorities, to search the record to determine the basis for decisions made by those authorities. In Parks v. Planning Zoning Commission, 178 Conn. 657, 661-62, 425 A.2d 100 (1979), we said that `[t]he [planning and zoning] commission's failure to state on the record the reasons for its action, in disregard of General Statutes section 8-3, renders appellate review more cumbersome, in that the trial court must search the entire record to find a basis for the commission's decision. . . .' We further stated that `[i]f any reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the community, the decision of the commission must be upheld'. . . We have enunciated this duty of a trial court with respect to appeals from zoning boards in a long line of cases. (citations omitted.)
Gagnon, supra. See Stankiewicz v. Zoning Board of Appeals,15 Conn. App. 729, 732, 546 A.2d 919 (1988); Raeser v. Conservation Commission, 20 Conn. App. 309, 311 (1989).
The basic issue before this court is whether the Inland Wetlands Commission of the Town of New Milford acted illegally, arbitrarily or in abuse of its discretion when it denied the application of Taylor Road Associates for a permit to conduct a regulated activity in a wetland area.
Appellate review of any agency's decision is of limited scope. The reviewing court does not make a broad de novo review of the record. Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 541,525 A.2d 940 (1978). It does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Id. 540-42. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given. Id., 539-40.
In Kaeser, supra, the court, in sustaining the action of the agency which denied the application of the plaintiff for a wetlands permit, stated at page 311 of its decision, "the commission denied the plaintiffs' application on the basis of its determining, that `the proposed activity will create conditions which may significantly CT Page 2585 or adversely affect the health, welfare and safety of the Community and the Mill River environment.' The plaintiffs claim that this is merely a conclusory statement and not a reason for denying a permit. Even if this were so, the reviewing court may `search the record for reasons to support the agency's decision.'" Id. (Citations omitted.)
In attempting to arrive at reasonable solutions to carry out the mandate imposed upon it by the General Statutes, the New Milford Inland Wetlands Agency is by no means confined to a consideration of only such evidence as may be presented to it, and it is not required to disclose at the public hearing the information upon which it will act. It is entitled to take into consideration any facts which may have been learned through personal observation. Kaeser, supra, 316.
The Agency members in the present case viewed the site, a factor the Supreme Court has considered important. Kaeser, supra, 316. There is a presumption that such an Agency as the New Milford Inland Wetlands Agency has acted with fair and proper motives, skill and judgment. Strain v. Mims, 123 Conn. 275, 285; Burlington v. Jencik,168 Conn. 506, 508-509. If it appears that the Agency has acted reasonably and fairly exercised its judgment after a full hearing, the court must be cautious about disturbing the authority. Raybestos-Manhattan, Inc. v. Planning and Zoning Commission, 186 Conn. 466, 469.
At its meeting on June 7, 1990, the Agency unanimously voted to deny the application. Agency member Perkins stated the reasons for the decision as follows:
 Moving right through the items on this list I think that the ability of the land to support fish and wildlife would be stripped of it, while concluded that Mr. Trautman's findings that it is presently sterile, likely incorrect, that following construction, given the testimony we've heard, that the land certainly would have difficulties supporting fish and wildlife so we're looking at destruction of a habitat. Secondly, there is no evidence that conclusive that flooding and drainage would be mitigated by the proposed construction In fact, quite the opposite is suggested that there may be a likelihood of the construction increasing the likelihood of flooding and corrosive drainage. With regard to the protection of both surface and groundwater, I have not seen or heard any testimony nor evidence that we really understand the groundwater in the area and where residential wells might be sunk so I think that the application is delinquent in that it did not really take the time to ascertain the impact on groundwater supplies because groundwater supplies were not located. With regard to sediment and control and the polluting of the stream, we've got a couple of problems. One, that the number of streams coursing through the property have not been documented in the application so that CT Page 2586 you can't begin to measure or evaluate the impact of their, of (sic) pollution. And, secondly, . . .while some of sediment controls have been delineated in the application, I think that the. . .of expert testimony was not adequate. With regard to alternatives that allow the applicant to maintain their basic objective, I think the basic objective when we refer to the application, basic objectives, proposed activity is a 16-lot subdivision and I don't believe that we have looked at, have seen an adequate number of alternatives to that and it would be difficult to really begin to measure whether there would be more or less detriment or effect to the alternatives. The applicant was quite adamant in stating that there have been no alternatives offered by the applicant, that any suggestions should merely be considered as modifications. Long term productivity of the land and the area would be denied by these construction activities. I think all of us who have seen, walked the area recognize that it is of such a fragile character that major construction activity, in particular the stream crossings and the cul-de-sac and the steepness of the slopes and the proposed 1 to 1 relationship would not only irreversibly damage the wetlands and the regulated area but would likely create extraordinary erosion. Let me speak from personal experience and also from having seen what has happened at the Meadow Wood Subdivision of a relatively similar construction activity, a permit for which was granted before this Commission was seated. There has been no evidence of a conclusive nature presented by either our experts or by the experts presented by the applicant whether or not the value of the property downstream might be threatened or some devaluation result by the proposed activity and for as long as that is moot I don't think that we could risk approval of an application without knowing what the consequences of it might be to abutting landowners. I do not think that the proposed activity is suitable for this area and that there are likely a number of alternative activities but again not having been presented with those alternatives I am not prepared to suggest them. Those are among my reasons for making the motion for denial.
(Record Item #4.)
In its review of the application of Taylor Road Associates the Agency specifically referred to the criteria set forth in Section22a-41 of the General Statutes and Section 9.2 of its own regulations. A review of the record reveals ample support for the decision of the Agency to deny the application of Taylor Road Associates.
Taylor Road Associates alleges in paragraph 6(c) of its complaint that the plaintiffs established by competent and expert CT Page 2587 evidence at the hearings before the defendant that no feasible and prudent alternative existed to the plaintiffs' plan of development.
General Statutes Section 22a-41b provides:
 In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record.
General Statutes Section 22a-41b.
Neither the General Statutes nor the local regulations compelled the Agency to submit for the consideration of the applicant plans or drawings for all possible alternatives. In Huck, supra, 553, the court ruled that the statute places no obligation on the Agency to demonstrate that reasonable alternatives to the proposal submitted by the applicant exist.
Even though the Agency had no obligation to demonstrate that reasonable alternatives exist to the proposal submitted by Taylor Road Associates, the 43 page transcript of the meeting held by the Agency on June 7, 1990 (Record Item #68) discloses alternatives which the applicant failed to pursue. At page 28 of the transcript (Supplemental Return of Record, #68) the Agency discussed the feasibility of bridging the brook crossings or clustering all development on the lower portion of the site. The clustering proposal would eliminate the need for any brook crossings and would eliminate all of the huge cuts and fills needed to build the road and service the proposed lots after the bridge crossings.
It is apparent from a review of the record that there is no basis to find an abuse of discretion on the part of the Agency. Accordingly, the appeal is dismissed.
PICKETT, JUDGE