[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUN OF DECISION RE: PLAINTIFFS' APPEAL OF DEFENDANT'S DENIAL OF VARIANCE APPLICATION AND REQUEST FOR MODIFICATION OF VARIANCE CONDITION
The plaintiffs, Mary Gay and Florence O'Brien, appeal the defendant Westport Zoning Board of Appeals' decision to deny the plaintiffs' application to remove a variance condition forever prohibiting a lot owned by the plaintiffs from being used as a building site. The plaintiffs also appeal the board's decision to deny the plaintiffs' application for a variance allowing them to build a single family residence on this same lot.
The relevant factual background of this action is as follows. In 1950, Emanuel Massiello, a land developer, applied for subdivision plan approval with respect to twelve lots of land, each approximately one acre in size, in Westport, Connecticut. (Return of Record [ROR] Item 2.) On January 16, 1950, the Westport Planning and Zoning Commission approved Massiello's application for subdivision plan approval. (ROR Item 2, Exhibit B; ROR Item 41.) Approximately two weeks later, on January 30, 1950, Massiello filed and recorded the approved subdivision plan (the Massiello subdivision) with the town recorder. (ROR Item 2, Exhibit B.) CT Page 13229
Lot L, the lot at issue in the present appeal, is a 1.08 acre parcel of land located within the Massiello subdivision. (ROR Item 2, Exhibit B.) The plaintiffs, Mary Gay and Florence O'Brien, are the current owners of Lot L, having acquired ownership of the lot by way of inheritance. (ROR Transcript of 9/23/97 hearing p. 21; Pl.'s Appeal, Exhibit A.)[1] To date, no structure or building has ever been constructed on Lot L.
At the time that the Massiello subdivision plan was approved and recorded in 1950, the subdivision was located in an AA zone district. (ROR Item 25.) Pursuant to Westport zoning regulations, "the purpose of the AA zone [d]istrict is to allow single-family residences on a minimum one acre lot." (ROR Item 38.) In 1953, the zone district in which the Massiello subdivision was located changed from an AA zone district to an AAA zone district. (ROR Item 25; ROR Item 2.) The Westport zoning regulations provide that in an AAA zone district, "[e]ach lot shall have a minimum area of two (2) acres (87,120 square feet) and shall be of such shape that a square with two hundred (200) feet on each side will fit on the lot." (ROR Item 39.)
In 1956, a lot merger provision was added to the Westport zoning regulations. (ROR Item 25.) The lot merger provision required that all nonconforming adjacent lots in the subdivision with common ownership merge into one lot. (ROR, Transcript 9/23/97, p. 2.) Lot L, however, was unaffected by the lot merger provision and did not merge with any adjacent lot within the subdivision. (ROR, Transcript 9/23/97, p. 6; ROR Item 1.)
By 1962, Massiello had sold some of the lots in the subdivision, but he still retained ownership over six of the subdivision lots, including Lot L. (ROR Item 25.) In February of that year, he applied for a variance (or waiver) of the area and rectangle requirements of the AAA zone district for six of the lots in the subdivision (Lots A, B, C, J, K and L). (ROR Item 25.) The Westport Zoning Board of Appeals (board) approved his application, but that approval was reversed on appeal by the Court of Common Pleas for Fairfield County. (ROR Item 13.) In sustaining the appeal brought by adjacent property owners to the subdivision, the court held that "however sufficient [the reasons for the variances] might be in law, the difficulty is that they are not grounded in the evidence in the record." (ROR Item 13.) As such, the court was required to sustain the plaintiffs' appeal because the board's decision was not reasonably supported by the facts in the record. CT Page 13230
Four years later, in 1966, Massiello returned to the zoning board of appeals and requested a variance (variance application #2005) for a 3.36 acre parcel of land located in the subdivision.[2] (ROR Item 36.) Massiello requested that the merged lot be divided into two lots of 1.51 and 1.85 acres each, for the purpose of constructing a single family residence on the smaller lot.[3] (ROR Item 36; ROR Item 2, Exhibit C-2.) The board approved his application, but it also imposed two conditions on its approval. (ROR Item 2, Exhibit C-3.) Of particular importance to this appeal, the board approved Massiello's variance application with the condition that "Lot `L' shall never be used as a building site." (ROR Item 2, Exhibit C-3.)
The plaintiffs, as the current owners of Lot L, claim that this condition was illegally and improperly imposed on the lot, and therefore it should be removed. (Pl.'s Mem, p. 5.) Thus, on June 27, 1997, the plaintiffs applied to the board for "variances of the lot area and shape requirements and for removal of a `restriction' which had been illegally placed upon said lot so as to prevent its future use as a building lot." (Pl.'s Appeal, ¶; 2; ROR Item 2.) On November 12, 1997, the board voted unanimously to deny the plaintiffs' application. (Pl.'s Appeal, ¶; 3; ROR Item 57.) Consequently, on November 26, 1997, the plaintiffs commenced this appeal. (Pl.'s Appeal, Sheriff's Return.) The plaintiffs request that the court sustain their appeal and reverse the board's decisions with respect to their variance application, as well as their request to remove the variance condition. (Pl.'s Appeal, Prayer for Relief.)
The plaintiffs, Mary Gay and Florence O'Brien are the legal owners of Lot L located in the Massiello subdivision; (ROR Item 2; Pl.'s Appeal, Exhibit A, Quit Claim Deed); and at trial the court determined that the plaintiffs were aggrieved.
The plaintiffs argue in support of their appeal that the condition attached to the 1966 Massiello variance, that Lot L shall never be used as a building site, was illegally and improperly imposed by the zoning board of appeals. (Pl.'s Pretrial Mem. p. 4.) Particularly, the plaintiffs claim that "[a] [z]oning [b]oard of [a]ppeals may only act in respect of property which is the subject of an application made to and pending before it. It cannot extend its jurisdiction to other property. . ." (Pl.'s Pretrial Mem. p. 4.) Thus, the plaintiffs argue that the CT Page 13231 court must sustain their appeal and direct the removal of the illegal condition.
The board argues that the condition imposed on Lot L in 1966 was reasonable and appropriate, and therefore, the condition is proper and enforceable. (Def.'s Pretrial Mem. p. 3.) Furthermore, the board claims that the condition was granted with the consent of the owner, and as such, it is "unpersuasive" for the plaintiffs to argue now that the condition is illegal. (Def.'s Pretrial Mem. p. 4.) Finally, the board argues that "it is simply too late for [the] [p]laintiffs to attempt to question the [b]oard's reasoning from 1966." (Def.'s Pretrial Mem. p. 4.)
The board's official collective decision states that "[t]his variance was denied because no hardship was proven the [b]oardfelt there was no reason to overturn the previous conditionimposed." (Emphasis added; ROR Item 57). The court is unable to discern from this statement the factual basis for the board's decision, and therefore an examination of the record is necessary "to determine whether a basis exists for the action taken."Stankiewicz v. Zoning Board of Appeals, supra, 15 Conn. App. 732.
The record reflects that in December 1965, the James Construction Corporation (James) applied for a variance, (variance application #1980), of the AAA zone district area and shape requirements with respect to Lot G in the Massieilo subdivision. (ROR Item 35.) On December 9, 1965, however, rather than act on the application, the board voted to reserve judgment "to allow the applicant [James], his immediate predecessor in title [Massiello],[4] and the numerous objecting parties [residents of the Massiello subdivision, as well as other adjacent owners] an opportunity to come to some amicable settlement acceptable to the [b]oard." (ROR Item 35 p. 3.) Consequently, only after the parties had an opportunity to meet, did the board vote to approve James' variance application to build a structure on Lot G. (ROR Item 35.) The board's approval, however, was conditioned on the requirement that Lot L never be used as a building site. (ROR Item 35.)[5]
Two months later, on March 10, 1966, Massiello applied to the board for a variance, (variance application #2005), to divide the 3.36 acre parcel (discussed supra) in the subdivision. (ROR Item 2, Exhibit C-3.) That variance application was approved on condition that "Lot `L' shall never be used as a building site." (ROR Item 2, Exhibit C-3.) CT Page 13232
As such, the board had originally placed the condition on Lot L in its approval of variance application #1980 (the James variance), and then had reiterated the condition in its subsequent approval of variance application #2005 (the Massiello variance). (ROR Items 35 and 36.) "A zoning board of appeals may, without express authorization, attach reasonable conditions to the grant of a variance. . . The right to attach reasonable conditions to the grant of a variance is not dependent upon express authorization from the lawmaking body. . . Were it not for the conditions imposed by a board of appeals, variances might not be supportable as being in harmony with the general purpose and intent of the zoning ordinance." (Citations omitted; internal quotation marks omitted.) Burlington v. Jencik, 168 Conn. 506,509, 362 A.2d 1338 (1975); Caseria v. Zoning Board, Superior Court, judicial district of Fairfield, Docket No. 312301 14 CONN. L. RPTR. 407 (June 12, 1995, Levin, J.).
Upon review of the record and the law governing variances and variance conditions, this court finds that the board acted improperly in 1966 when it approved variance applications #1980 and #2005 on the condition that Lot L never be used as a building site. The Connecticut Supreme Court has stated that a "variance and the attached condition are inextricably linked, the viability of the variance being contingent upon the satisfaction of theconditions." (Emphasis added.) Burlington v. Jencik, supra,168 Conn. 510. Here, the condition that Lot L never be used as a building site was not in any way related to whether Lot G (variance application #1980) could be used as a building site, or whether the merged 3.36 acre lot (variance application #2005) should be divided.
Although the board in 1966 never stated clearly its reasons for imposing the condition on Lot L, the record does not support an interpretation that the board imposed the condition on Lot L because it was necessary for the viability of the variance. Rather, the record shows the condition was imposed on Lot L because of the opposition mounted by the other residents of the subdivision. (ROR Item 35; ROR Item 2.)
With respect to variance application #1980, the record reveals that the residents living in the immediate area of Lot G, including residents of the Massiello subdivision and Sturges Highway, signed a petition in opposition to this variance application. (ROR Item 35.) As a result, the board opted not to CT Page 13233 vote on the application until after Massiello, the residents, and James had an opportunity to come to some resolution regarding the further development of the subdivision. (ROR Item 35.) Only after that meeting took place, and Massiello agreed not to build on Lot L, did the board approve the variance application for Lot G. (ROR Item 35.)
Additionally, the record before the board regarding variance application #2005 reveals that the residents again were not in favor of further development of the subdivision. In particular, a Mr. Smith who lived at 7 Massiello Circle stated that "he was told there would not be any more houses built or any other variances applied for in the subdivision." (Emphasis added; ROR Item 2.) Moreover, another resident indicated that "within the last year, two sub-standard lots were approved in this subdivision [for the construction of residences] and now the applicant is asking for two more, and if this is approved . . . the [b]oard will be forced to approve other requests. . ." (ROR Item 2.) Finally, the owner of Lot F stated that "he is opposed to the granting of the variance, [because] it is just more creeping spot zoning." (ROR Item 2.).
In fact, as the record shows, the viability of variance #1980 was not contingent upon the satisfaction of the condition at all. Indeed, prior to the board's decision, the board had routinely approved variances of the AAA zone district within the subdivision without the imposition of any conditions restricting further building on other lots. (ROR Item 1.) Specifically, the board had approved variances of the two acre lot minimum for lots in the subdivision on four other occasions: Lot I in 1955 (variance #641; 1.51 acres); Lot J in 1955 (variance #641; 1.0 acre); Lot E in 1965 (variance #1895; 1.05 acres); Lot F in 1966 (variance #2003; 1.24 acres). (ROR Item 1.)[6] None of the aforementioned varianced lots included any conditions prohibiting construction on other lots in the subdivision.
Similarly, the board's approval of variance #2005, the variance providing for the division of the 3.36 acre parcel, did not hinge on whether Lot L was ever used as a building site. The record demonstrates that following the board's approval of Massiello's variance application #2005, the composition of the Massiello subdivision was as follows: Lot A was a 1.86 acre lot with a residence; former Lot B no longer existed as it had been absorbed by Lots A and C; Lot C had been varied to allow a residence on the 1.51 acre lot; Lot D was a 1.05 acre lot with a CT Page 13234 residence; Lot E was a 1.05 acre lot with a residence; Lot F was a 1.24 acre lot with a residence; Lot G had been varied to allow a residence on the 1.14 acre lot; Lot H was a 1.03 acre lot with a residence; Lot I was a 1.34 acre lot with a residence; Lots J and K had been combined to allow a residence to be built on the 2.25 acre lot; and Lot L (1.08 acres) was forever prohibited as a building lot. (ROR Item 35; ROR Item 1.)
All of these lots, except the combined J and K lots, had far less than the required two acre minimum for single family residences in the AAA zone district. Indeed, the record demonstrates an utter lack of conformity within the subdivision with the AAA zone district. "A board which approves variances in such a fashion undertakes zoning legislation on an ad hoc basis and abuses the discretion with which it has been vested." Ward v.Zoning Board of Appeals, 153 Conn. 141, 146-47, 215 A.2d 104
(1965). As such, it is difficult for the court to conclude how forbidding Lot L from becoming a building lot bore any rational relation to whether a variance that allowed a division of the 3.36 acre parcel, in contravention of the zoning regulations, would ensure viability. Finally, the fact that the board approved the variance applications with a condition attached to Lot L, which was not even the subject of the variance applications at all, raises serious questions for the court. In fact, the court could not find even a single instance in which a zoning board of appeals placed a condition on a parcel of property that was not also the subject of the variance application. The cases found by the court all involved issues involving the validity of variances and conditions imposed upon the same subject property.
In light of the foregoing, the court finds that the condition attached to variance applications #1980 and #2005, that Lot L never be used as a building site, was unreasonable, illegal and void.[7] "[W]hen a condition imposed by a board is unreasonable, it may be revoked, set aside and declared to be void and of no force." (Internal quotation marks omitted.) Beckv. New Canaan Town, supra, Superior Court, Docket No. 110811,5 CONN. L. RPTR. 669; Vaszauskas v. Zoning Board of Appeals, supra,215 Conn. 66; Reid v. Zoning Board of Appeals, supra,235 Conn. 864.[8] Accordingly, the plaintiffs' appeal for the removal of the condition attached to Lot L is sustained.
The court's ruling sustaining the plaintiffs' appeal with regard to the condition attached to Lot L renders many of the remaining issues before the court moot. A brief discussion of CT Page 13235 General Statutes § 8-26a(b) is appropriate, however.
The plaintiffs argue in support of their appeal from the board's decision denying the variance application that "General Statutes § 8-26a[b] preserves the legal status of [the plaintiffs'] lot by providing that lots in an approved subdivision may not be required to conform to subsequent changes in the [z]oning [r]egulations. . ." (Pl.'s Mem. pp. 2-3.) As such, the plaintiffs argue that they are not required to apply for a variance in order to build a single family residence on Lot L.
The board argues in opposition that General Statutes § 8-26a is irrelevant because the condition attached to variance applications #1980 and #2005 renders the statute "ineffective." (Def.'s Mem. pp. 6-7.) Furthermore, the board claims that the Westport town attorney advised the board that Lot L had already merged with a neighboring lot, therefore, the board had ample justification to reject the plaintiffs' application with respect to the statute.
General Statutes § 8-26a(b) provides in pertinent part: "When a change is adopted in the zoning regulations . . . of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission . . . and filed or recorded with the town clerk, shall be required to conform to such change." Thus, "if [a parcel of] property [is] part of a valid subdivision approved prior to the adoption of [a] lot shape requirement, the . . . property [is] exempt from the lot shape regulation. General Statutes § 8-26a(b)." Millerv. Zoning Board of Appeals, 36 Conn. App. 98, 105, 647 A.2d 1050
(1994). "General Statutes § 8-26a (b) shields from subsequent zoning regulations lots shown in a subdivision plan that was approved prior to the regulatory changes by the planning commission or other body exercising the powers of a planning commission." (Internal quotation marks omitted.) Fasig v. Town ofFairfield Zoning Bd. of App. , Superior Court, judicial district of Danbury, Docket No. 32 26 16 (August 21, 1996, Riefberg, J.). "Section 8-26a permanently prohibits the application of new subdivision or zoning regulations to subdivisions approved by the planning commission and recorded with the town clerk." (Citations omitted.) Ross v. Conservation Comm'n, Westport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 301484,10 CONN. L. RPTR. 313 (November 12, 1993, Fuller, J.). CT Page 13236
As indicated previously, the record reflects that in 1950, Massiello owned twelve parcels of land in Westport, each of which consisted of approximately one acre. (ROR Item 25; Exhibit B.) Lot L was one of the original lots incorporated into the subdivision plan. (ROR Item 1.) At that time, the zone district in which the parcels of land were located was zoned AA; therefore, only one acre of land was required for the construction of a single family residence. (ROR Item 2; ROR Item 38.)
The record also reflects that in early January, 1950, Massiello applied to the Westport Planning and Zoning Commission for the approval of a subdivision plan for the land located in the AA zone district. (ROR Item 2; Exhibit B.) On January 16, 1950, the Westport Planning and Zoning Commission approved the Massiello subdivision plan. (ROR Item 2, Exhibit B; ROR Item 41.) Thereafter, on January 30, 1950, the record reflects that Massiello filed and recorded the approved subdivision plan with the town recorder. (ROR Item 2, Exhibit B.)
In 1953, the Westport Zoning and Planning Commission rezoned the area in which the Massiello subdivision was located from an AA zone district to an AAA zone district. (ROR Item 25; ROR Item 39.) Additionally, in 1956, a merger provision was added to the zoning regulations. (ROR Item 25; ROR Item 1, Exhibit 3.) This merger provision affected the area in which the Massiello subdivision was located. (ROR Item 1, Exhibit 3.) Nevertheless, the record shows that Lot L was unaffected by the lot merger provision of 1956, and did not merge with any other lot in the subdivision. (ROR, Transcript 9/23/97, p. 6; ROR Item 1, Exhibits 1, 2, and 3; ROR Item 2; ROR Item 13.) In fact, the record reflects that, to date, Lot L retains the same boundaries and qualities it had in 1950 when the Massiello subdivision was approved. (ROR Item 1.)
Consequently, General Statutes § 8-26a (b) should be applied to the present action, and therefore, the plaintiffs were not required to apply for a variance of the AAA zone district in order to construct a single family residence on Lot L.
Accordingly, the plaintiffs' appeal of the Board's decision to deny their variance application is sustained.
DEAN, J. CT Page 13237