[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Amy M. Macher and Peter J. Macher, appeal a CT Page 7754 decision of the defendant Town of Willington Zoning Board of Appeals.
The plaintiffs allege they appealed to the Zoning Board of Appeals from the order of the Zoning Enforcement Order and that on June 23, 1998 the Zoning Board of Appeals held a meeting on said appeal. The Zoning Board of Appeals denied the plaintiffs' appeal explaining that a special permit is required.
The plaintiffs allege that they are aggrieved by said decision. Also that by denying their application, the plaintiffs contend that the Zoning Board of Appeals acted illegally, arbitrarily and in abuse of their discretion.
 II
The plaintiffs operate a business known as the American Eagle Saloon and Cafe located at 15 River Road, Willington, Connecticut. A prior business at said location was known as the Golden Eagle, it was never required to obtain a special permit and was considered a non-conforming use.
The Town of Willington's Zoning Regulations require that a special permit be obtained for the sale or use of spiritous liquors. Said regulation reads as follows:
 Special Permit Required. No building, lot, or permit premises shall be used, or altered, extended or enlarged for use, for the sale or exchange of spiritous liquors at wholesale or retail, whether for consumption on the premises or otherwise, or for the storage or manufacture of spiritous and alcoholic liquors for purposes of sale or exchange, unless and until a Special Permit for such use has been approved by the Commission. Any use of land or buildings which requires the issuance of a permit by the Connecticut Liquor Control Commission, pursuant to Connecticut General Statutes Chapter 545, shall be deemed to require such Special Permit. [from former Section 4.6.4, amended effective 8/1/96] (ROR, Item Q. p. 14-2)
 III
Standing is required to bring an administrative appeal. "[I]in order to have standing to bring an administrative appeal, a person or entity must be aggrieved. . . . Aggrievement is a CT Page 7755 question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal. . . ." (Citations omitted; internal quotation marks omitted.) Water Pollution Control Authority v. Keenev,234 Conn. 488, 493, 662 A.2d 124 (1995).
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . ." (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987).
In the present case, the plaintiffs allege in the appeal that they are commercial tenants for premises at 15 River Road, Willington, Connecticut. Plaintiffs' exhibit 1 shows that the leasee is A.M.P.M. — Willington, LLC and the lease is signed by Amy Macher, member of A.M.P.M., Willington, LLC. At a hearing held on May 27, 1999, Amy Macher testified that she is the manager of A.M.P.M. — Willington, LLC.
Even though the leasee of the property in question is A.M.P.M. — Willington LLC, Amy Macher is the managing partner thereof. The plaintiffs are the owners and control A.M.P.M. — Willington LLC, they are the real parties in interest. As beneficial owners the plaintiffs have a direct interest in the property in question. Loew v. Falsey, 144 Conn. 67. The plaintiffs therefore have demonstrated a specific legal interest in the subject matter of the decision by the Zoning Board of Appeals which decision has injuriously affected plaintiffs rights of usage of the demised premises, accordingly aggrievement is found.
 IV
In reviewing an agency's decision, the court must determine whether the record reasonably supports the conclusion reached,Primerica v. P Z Commission, 211 Conn. 85. The reviewing court CT Page 7756 must sustain the agency's determination if an examination of the record discloses evidence that supports one of the reasons given. An agency's action must be sustained if any one of the reasons stated is sufficient to support the decision, Frito-Lay. Inc. v.P Z Commission, 206 Conn. 554. The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency.
This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action.
The court must determine an appeal from the Zoning Board of Appeals on the record. The court cannot substitute its judgment for that of the local zoning authority. The determination of a non-conforming use is a question of fact for the Zoning Board of Appeals to determine, Toulis v. Parrott, 42 Conn. App. 272.
 V
In this appeal, the record reveals that on February 2, of 1998, Amy Macher approached the zoning enforcement officer requesting her to sign her liquor permit application. The zoning enforcement officer advised that a special permit would be required. The plaintiff questioned the need for the special permit. The zoning enforcement officer agreed to sign the application only if the plaintiff would apply to the Willington Planning and Zoning Commission for a special permit. The plaintiff objected to filing for the permit but nevertheless did so. The plaintiff was advised that she could appeal the zoning enforcement officer's decision and was given forms for that purpose.
The plaintiff did file for the permit and appeared before the Planning and Zoning Commission at its meeting of March 17, 1998, the Planning and Zoning Commission approved the plaintiffs' special permit (ROR, item L). CT Page 7757
The plaintiffs, on March 18, 1998 appealed to the Willington Zoning Board of Appeals from the decision of the zoning enforcement officer. The Board received the appeal at its meeting of April 9, 1998 (ROR C). In this regard, the zoning enforcement officer outlined her decision in a letter directed to the plaintiffs (ROR, item G).
The zoning enforcement officer sent a memo to Carl Csiki, Chairman Zoning Board of Appeals (ROR I). The memo outhnes the chronology as follows:
 February 2, 1998 — Ms. Macher came into the office initially requesting a signature on a liquor application — she was told she needed to go to the Planning and Zoning Commission for a special permit. She talked about timelines, signatures already being on the form and having only a sixty (60) day time period in which to finalize it and submit it, her difficult financial position and about being in a hurry since she hadn't known this was required. Ms. Macher left without submitting anything.
 February 3, 1998 — I advised the Planning and Zoning Commission that someone had come in who wanted to reopen the former "Eagle" and was in a bind because of her signature deadlines. I told them when she came back in to apply I would probably sign the application at that time in order that she could meet her deadlines and so that she would not incur a hold up with her liquor application. No opposition (or encouragement) was given by the Commission.
 On or about February 9, 1998 — I had occasion to talk to Attorney Branse about certain other matters and relayed to him what had transpired. Mr. Branse did not appear to have any concerns.
 On February 10, 1998 — Ms. Macher came back in to the office, she said that she did not have problem going through proper procedures but reiterated her signature time lines, financial hardship matters, etc. She then said she did not think she should have apply for a permit because she was not changing anything and during same conversation said was going to have more of a cafe type operation. I advised her that if she did not agree with my ruling she could appeal — she was given an application form, or if she wanted to apply for a special permit she could apply — she was given an application form. She said again that she didn't have a problem going through proper procedures and she CT Page 7758 talked about signature and opening deadlines and the financial hardship she would incur if she could not open on time again. I told her that once the special permit application was submitted I would sign the liquor application as not to hold her up although I felt technically I should wait until a special permit was granted. Since there was previous business I felt the special permit would probably be granted — Once her application was submitted, I signed her liquor application form.
 February 17, 1998 — Mr. and Mrs. Machers went to Planning and Zoning for their preliminary meeting.
 February 18, 1998 — Chairperson Dion sent Mr. and Mrs. Macher a letter telling them they needed a special permit.
 On or about February 19, 1998 — I talked with Mr. Branse again regarding the ability of the Macher's to appeal a decision by the chairperson of Planning and Zoning. He advised me to write a ruling letter as well.
 On or about February 20, 1998 — Ms Macher came in to the office with copies of Connecticut State Statutes § 8-2, § 8-2h
and § 8-3 (h) highlighted and said didn't think she should have to get special permit. She said the statutes say she can't be prohibited from operating. I told her that the Commission may be regulating her business as opposed to prohibiting it. I told her she could withdraw her pending special permit application and go to the Zoning Board of Appeals to appeal my ruling. I did tell her that I planned to write to liquor control and tell them I signed her application without proper authority and that I believed she needed a special permit. Ms. Macher indicated she feared a denial of her application and I assured her I did not see that happening. I told Ms Macher I would put my ruling in writing.
 On February 20, 1998 — I wrote a letter to Mr. and Mrs. Macher putting the ruling in writing.
 On March 17, 1998 — the Planning and Zoning Commission held a Public Hearing on the application and later that same evening approved the permit with conditions.
On March 19, 1998 — the Macher's filed an appeal.
 On May 14, 1998 — Mr. Macher said several times during CT Page 7759 public hearing held by the Zoning Board of Appeals that he told me certain things and that I told him certain things. I never saw or spoke with Mr. Macher. Ms. Fabrycki indicated to me that Mr. Macher did come in to the office on 3/6/98 for copies of the site plan and on 4/3/98 when he purchased regulations and copies of minutes of the PZC meeting. Ms. Fabrycki assures me she did not discuss the regulations with Mr. Macher.
 Mr. Macher did make an interesting point in that Section 14.08 of the Town's Zoning Regulations do not allow alcohol as a primary use. However the Macher's stated to the Board that they have hired a cook and have daily specials. This, effectively, makes the principal use food. (Their advertisements for the business emphasize their food specials as well). One could argue that if this proposal violates zoning regulations it should be ordered to cease and desist.
 This building is in an aquifer zone and has a history of septic problems. The Sanitarian has limited the seating to 48 because of the inadequacy of the existing system to handle an increase and the inability of the site to allow for adequate expansion.
 I believe that Section 14.04 of the Towns Zoning regulations require a Special Permit for this operation.
 Ms. Macher was informed that a special permit was needed from the beginning, and that the decision could be appealed.
The Machers decided to apply for the special permit.
The special permit was granted and has not been appealed.
The special permit is valid.
Based on said memo, the zoning enforcement officer felt that the plaintiffs' primary use of the premises was to serve food and therefore a special permit was required. This conclusion was stated in a letter to the plaintiffs by the zoning enforcement officer (ROR G).
At a special meeting held on June 23, 1998, the Zoning Board of Appeals voted to sustain the decision of the zoning enforcement officer of February 20, 1998, whereby a special permit was required; also the Board concluded that the CT Page 7760 application for a special permit constituted a waiver of any claim to a prior non-conforming use.
In denying the Machers appeal, the Zoning Board of Appeals upheld the decision of the zoning enforcement officer in concluding that the proposed cafe business required a special permit pursuant to § 14.04 and that the application for a special permit constituted a waiver of any claim to prior non-conforming use (ROR 0).
ROR N is entitled Town of Willington Zoning Board of Appeals Public Hearing — Continuation June 4, 1998. At said hearing, Amy Macher appeared before the Board and represented the type of business conducted on the premises. She indicated that a cook was hired. The Board concluded that based on the representations made by Amy Mesher, that she was establishing a new restaurant/cafe use which required a special permit, this determination coincided with the conclusion made by the zoning enforcement officer.
The Board has the prerogative in determining credibility of witnesses. Conetta v. Zoning Board of Appeals, 42 Conn. App. 133. In Conetta, the court stated the following:
 "It is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing, as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citation omitted.) Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 731-32, 546 A.2d 919 (1988), affd, 211 Conn. 76, 556 A.2d 1024 (1989). The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940
(1987). "[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Mobil Oil Corp. v. Zoning Board of Appeals, 35 Conn. App. 204, 209, 644 A.2d 401 (1994).
The Court finds that there is substantial evidence in the record to support the Board's decision upholding the determination of the zoning enforcement officer that a special permit was required. Accordingly, the plaintiffs appeal is hereby dismissed. CT Page 7761
Stengel, J.